## POLLY PIDGE *vs.* PALEMON PIDGE.

Though a husband so abuses his wife that she has justifiable cause to leave him, and does leave him for such cause, and does not return nor offer to return to him, and he, for five consecutive years next after her departure, wholly neglects to provide for her maintenance, and does not seek to live with her, yet she cannot maintain a libel against him for a divorce *a vinculo*, under *St.* 1838, *c.* 126, for his desertion of her PUTNAM, J. *dissenting*.

THIS was a libel for a divorce *a vinculo*, alleging the marriage of the parties at Taunton, in January 1831, and the wilful and utter desertion of the libellant by the respondent for the term of five years consecutively, from the first of February 1835, without her consent.

At the hearing before *Putnam*, J. it was proved that the parties were married, as alleged in the libel, and lived together for some years, in Taunton : That more than five years before the

filing of the libel, the respondent, without provocation, abused and beat the libellant, and that she thereupon left his house and never returned to him, nor offered to return ; that he remained in Taunton for some time afterwards, and then removed to Dighton, and from thence to Providence, in Rhode Island, where he resided during the greater part of said five years ; the libellant residing, all that time, in Taunton : That the respondent, after *the libellant so left his house,* never cohabited nor sought to co habit with her, and made no provision for her support, or the support of their infant child.

The judge decreed a divorce, as prayed for in the libel, and the respondent alleged exceptions.

*Coffin & Pratt,* for the respondent.

*Eddy & Eliot,* for the libellant.

The opinion of the majority of the court was delivered by

DEWEY, J. The libellant seeks to procure a divorce from the bond of matrimony, and insists, that upon the facts stated in the case, she brings herself within the provisions of *St.* 1838, *c.* 126. This statute enacts, that " a divorce from the bond of matrimony may be decreed in favor of either party, whom the *other* shall have wilfully and utterly deserted for the term of five years consecutively, and without the consent of the party deserted." The statute seems to prescribe three things as essential to the maintenance of such libel. 1. A wilful and utter desertion of the libellant by the libellee. 2. That such desertion by the libellee be continued five years consecutively. 3. That the desertion be without the consent of the libellant.

It is obvious, therefore, that the mere fact that the parties have lived in a state of separation for five years, is wholly insufficient to bring the case within the statute. The libellant must proceed a step further, and show that this separation was occasioned by the desertion of the libellee, and that this desertion was without the consent of the libellant.

It is quite apparent that in the present case these facts are not shown in the ordinary and literal sense of the words of the statute. The object of the libellant's evidence was rather, as it would seem, to show such alienation of feeling on the part of the

husband, accompanied with personal abuse, and gross negligence in providing for her wants, as would justify her in leaving him, and continuing to reside apart from him with her friends, during the term of five years.

We shall assume, in the further consideration of the subject, that the libellant has satisfactorily shown that her separation from her husband was occasioned by his extreme cruelty, and that her withdrawing from him was reasonably justified by fears as to her personal safety. This, as a matter of fact, was established at the hearing before a single judge, at *nisi prius*, and we do not go behind the report, as to the facts. The present inquiry is, whether a separation, under such circumstances, can be held to be a desertion by the husband, and properly authorize us to grant a divorce *a vinculo matrimonii*.

On the part of the libellant it is contended, that the term " de sertion " may reasonably be so construed as to include the wil- ful neglect of the husband to discharge the duties of the mar- riage relation, either by gross neglect to make suitable provision for his wife, or by exciting in her wellgrounded fears for her per- sonal safety ; and that if, for such or any other sufficient cause, she leaves his house and seeks protection elsewhere, and continues this separation for the term of five years — the husband doing nothing in the mean time to change the relation between the par- ties — this would present a case within the statute.

Before the passage of this statute, the only grounds for a divorce from the bond of matrimony between parties competent to form this connexion, were, the commission, by one of the parties, of the crime of adultery, or a conviction of some crime of that in- famous character, which should deserve, and have received a judicial sentence of punishment in the state prison or county jail, for a period of not less than seven years. Rev. Sts. *c.* 76, § 5. By the provisions of *St.* 1838, *c.* 126, a great change is introduced, and a divorce from the bond of matrimony may be now decreed without any crime having been committed by the libellee, cognizable by a court of criminal jurisdiction. This change of the law of divorce has been, by the terms of the statute introducing it, confined to a single class of cases, and

that specified with a good degree of precision. By the terms of that statute, the libel is to be filed and the divorce decreed in favor of that party " whom *the other* shall have wilfully and utterly deserted for the term of five years consecutively, and without the consent of the party deser.ed." Beyond the cases provided for in the statute, it is neither our duty or inclination to give facilities to the dissolution of the marriage contract. Had it been the purpose of the legislature to authorize a divorce from the bond of matrimony for extreme cruelty, or gross neglect to provide suitable maintenance for the wife, we must suppose that these cases would have been specified in the statute of 1838 ; and the fact that they are not so specified seems conclusive on the point of the intention of the legislature.

We are the more confirmed in this view from the fact, that the three subjects of desertion, extreme cruelty, and gross neglect to provide suitable maintenance, are all specially provided for in the Rev. Sts. *c.* 76, § 6, and made the foundation for a divorce from bed and board. All these cases being thus by the revised s.atutes provided for by one and the same law, the legislature have selected the case of wilful desertion, and made it the subject of a special provision, leaving the other cases to be gov erned by the former provisions of the revised statutes. It seems to us, therefore, that the statute of 1838 is limited to the case of wilful desertion by the libellee ; and that extreme cruelty, or neglect to provide suitable maintenance for the wife, by reason of which she is justified in leaving her husband, does not present the case of desertion by the husband, which is contemplated and required by this statute. To hold otherwise would be adding to the provisions of this statute, and opening a door for the greatest latitude in granting divorces. The broad ground is, as I understand, assumed by the libellant, that if for any good and sufficient reason arising from the misconduct of the husband, the wife shall withdraw from his society and his dwelling, she may, by thus withdrawing, and continuing to live apart from him for five consecutive years, put herself in a situation to demand, as a matter of right, a divorce from the bond of matrimcny, under this statute. To what extent will this doctrine

carry the provisions of the statute ?    Personal violence is not the only misconduct on the part of the husband, that might justify the wife in withdrawing from his roof.    There are other sufferings not less intense than those occasioned by bodily wounds. Angry words, coarse and abusive language, grossly intemperate habits, might bring greater sufferings upon a refined and delicate woman, than a single act of violence upon her person, and might well, in the reasonable judgment of the public, authorize her withdrawing from the society of her husband.    But the legislature has annexed no such penalty, as a divorce from the bond of matrimony, for causes like those just enumerated.    Yet such would be the practical construction of the statute, if it be admitted, that in cases where the wife leaves her husband for justifiable cause arising out of his misconduct, such separation is legally and technically a desertion by the husband.

It is strongly urged that the separation by the wife, in cases like the present, is virtually an involuntary separation on her part ; that she is not to be treated as having acted as a free agent in withdrawing from her husband ; and therefore that she cannot be properly said to have deserted him, and that her separation from him ought not and cannot properly be urged against her, on this occasion.    This argument is, in my opinion, entirely misapplied, when urged, as it now is, to sustain a libel filed by the wife, charging her husband with desertion.    It would be entirely sound, and availing too, if urged in defence of the wife, on the husband's seeking a divorce, and alleging, as the ground for the application, a wilful desertion by the wife.

To such an application it might well be urged, and the appeal would meet a hearty response in every breast, that the husband who by his brutal violence, or by a total wilful neglect to cherish and sustain his wife, in accordance with his marriage vows, should compel her to abandon his roof and seek shelter abroad, either by way of protection of her person from violence, or for the purpose of obtaining the necessary comforts of life — should be estopped from setting up, in a court of justice, such withdrawing of the wife as a wilful desertion by her.    To a husband seeking a divorce under such circumstances, it might well be said, your barbarity, your inhumanity, or your gross neglect, 'as

Pidge v. Pidge.

the case might be,) was the occasion of the separation of which you complain, and your wife was only an involuntary actor in the scene, and you must be content to abide the consequences resulting from your own misconduct.   Thus applied, the position would be sound, and the argument unanswerable.   But such is not the case before us.   The wife is not put on trial, and charged with wilful desertion, or any neglect of marriage duties, subjecting her to a dissolution of the marriage contract upon the application of her husband.   The husband charges upon her no wilful and unjustifiable desertion, and asks no penalties against her for any misconduct on her part.   The case does not therefore arise, in which she might properly avail herself of the necessity of her withdrawing from his society to rebut a charge of desertion brought against her.   The wife has thought proper to leave her husband, and, as we suppose, for reasonable cause.   The law was open to her, to proceed under the Rev. Sts. c. 76, § 6, against her husband for extreme cruelty, or for gross and wilful neglect to provide for her comfortable maintenance — the precise offences she now charges upon him by the evidence she adduces in support of her libel.   The penalty, annexed to such offences on the part of the husband, is a divorce from bed and board.   But instead of pursuing such remedy, and asking for the limited divorce authorized by law in such cases, she seeks to make these acts on the part of her husband the occasion for a divorce from the bond of matrimony, under the statute of 1838, which authorizes such divorce only in cases where the offence charged is a wilful desertion by the libellee.   This we think she cannot do ; and the libel must therefore be dismissed.

PUTNAM, J.   My learned brethren have dismissed the libel. But, with great respect, I think it should be sustained.

The defence made for the respondent is, that he has not deserted from his wife, but that his wife has deserted from him. The facts very briefly are, that she was compelled to leave the house wherein she had lived with her husband, by reason of his extreme cruelty, which was manifested by his personal assault and violence upon her.   I shall not state the particulars.   It will be sufficient to say that the judge who tried the cause was

satisfied that those facts were proved, and that the libellant gave no just cause or provocation for such conduct, but, on the con trary, that her husband was, throughout, the offending party, and that the course, which was pursued by the wife, was render- ed necessary for her personal safety. She was, then, in effect turned out of doors — not for her fault, but by his cruelty. Was that an act of desertion from her husband, within the meaning of the statute ? I think not. On the contrary, her conduct on that occasion was, in my judgment, perfectly justifiable.

It was held by the whole court, in *Houliston* v. *Smyth,* 3 Bing. 127, that where the wife leaves the husband, under such an apprehension of personal violence, as a jury shall deem to have been reasonable, her husband is liable for necessaries for her support. Such was the direction given by Best, C. J. and it was sustained as being perfectly correct. " A woman," said he, " is not bound to wait till actual violence is committed ; and if she has reasonable ground for apprehending danger, she may fly from the presence of her husband." But, as is before stated, in the case at bar, great personal violence was inflicted, before the wife left the house. From the time that she was thus obliged to leave the house, up to the filing of the libel — being more than five years consecutively — the respondent con- tributed nothing towards her support, and did not, during that time, cohabit with her, or offer so to do, but resided apart from her, a short time in Dighton, in the county of Bristol, but for the greater part of the time in Providence, in the State of Rhode Island.

Now I hold that these facts do constitute utter desertion. My learned brethren think that the conduct of the respondent did not amount to desertion, but merely to extreme cruelty and neglect to provide for his wife's maintenance, and that her remedy is confined to a libel praying for a divorce from bed and board only, for such cruelty and neglect. I certainly admit, that on the day after she left the house, as is before stated, she might have maintained a libel for extreme cruelty ; but she might waive it without prejudice to any rights which afterwards accru- ed I cannot think that she was obliged to resort to that reme

dy, or that it would be a bar to this libel, after his conduct had ripened into the offence described in the statute of 1838. On the contrary, I think it was utter desertion superadded to, and not merged in, this extreme cruelty. I am yet to learn, that if there was such a continued desertion as the statute contemplates, the wife would be barred of her remedy because her husband had, before the commencement of the desertion, inflicted other wrongs upon her. Suppose, for example, that a husband had, without any cause of offence, pushed his wife out of his house into the street, and had left her in the street, and run off to Rhode Island, and stayed there five years, without making any provision for her support. I presume that these facts would amount to utter desertion. Suppose the wife's libel should allege the desertion to have been for five years consecutively, from the day that she was thus abandoned in the street. Would it be a good defence, that, besides such desertion, the husband had before that time pushed her out of doors, and committed other acts of extreme cruelty? I do not believe it.

Now, to all legal and reasonable intendments, the wife who is obliged to fly from her husband's violence and house into the street, for her preservation, is to be considered to be there not of her own free will, but by reason of the force and violence of her husband. He has driven her from him ; and I hold that it would be a perversion of terms to say that she, under those circumstances, deserted from him.

The great principle of the law is, that no man shall be permitted to take advantage of his own wrong. It comes back then to the first question — did the wife wilfully desert from her husband, or did the husband wilfully desert from his wife ? There was certainly a complete separation for five years next before the libel was filed. And there is no suggestion or pretence that it was a separation by mutual consent, upon terms freely agreed upon and ratified by both parties. That case has no analogy to the present.

What then are we to understand the legislature to mean by desertion ? I suppose they would agree with Dr. Johnson, who says that to desert is " to *abandon*," " to *forsake*." Those

words are considered by Mr. Crabb, in his book on Synonymes, to be synonymous ; and among other explanations and illustrations of their meaning, he gives the following :  " We *abandon* those who are entirely dependent for protection and support ; they are left in a helpless state, exposed to every danger :  A child is abandoned by his parent.  We *desert* those with whom we have entered into coalition ; they are left to their own resources.  We *forsake* those with whom we have been in habits of intimacy.  They are deprived of the pleasures and comforts of society.  To *abandon* is totally to withdraw ourselves from an object ; to lay aside all care for it ; to leave it altogether to itself.  To *desert* is to withdraw ourselves at certain times, when our assistance and coöperation are required, or to separate ourselves from that to which we ought to be attached."

These explanations and illustrations very accurately describe the conduct of the respondent towards his wife, during the few years next before this libel was filed, and her forlorn condition ; forlorn, forsaken and abandoned, so far as related to any voluntary aid from her husband.

Will it be said that the respondent remained in Taunton, at his own house, a part of the five years, and therefore he did not desert his wife ?  I think it is much too narrow a construction of the statute to require, as a *sine qua non*, the actual removal of the party from the State or county, or even from the town, to constitute desertion.  We are to take into consideration the condition and circumstances of the party who is deserted, rather than the place or manner of living of the deserter.  It was of no consequence to the wife that the husband continued to remain a short time in the town and county — a part of the five years.  His desertion was complete.  She was as much abandoned, during that time, as she was during the residue, and much the greater part, of the time when he removed without the jurisdiction of the State.  Indeed, if he had remained in town the whole term of five years, seeing and knowing her distress and destitution, and furnishing no aid or support to her, his conduct would have constituted a more aggravated case of desertion, than if he had fled from and kept out of the State during

he whole term. In point of fact, the respondent had no communication whatever with his wife, during those five years. She was not the less forsaken because he was near and would not help her. It was no better for her that he might have afforded daily aid and comfort, when in fact he withdrew it, and left her, so far as he was concerned, to beg or starve, or subsist upon " her own resources."

Will it be said that she ought to have returned to the house from which she had been driven, without any redress, or offer of amendment and request on the part of her husband ? I think that position cannot be maintained with any semblance of justice. As long as the cause continued, which justified her in leaving, so long she was justified in not returning. She well knew the miseries she had endured under his roof, and the well grounded apprehensions of personal injuries, if she returned. It was for him to remove the cruel impediments which he had created. But he did not.

Will it be said that the wife consented to the separation ? If his acts should be translated into words addressed to her, they would be to the following effect : You may stay in my house and submit to be beaten and abused ; or you may go, and submit to be entirely forsaken. In this extremity, she left the house. And is it to be argued, that she consented to the separation ? If she had remained, there would be as much reason to say that she consented to be beaten and abused, as to say that by going away she consented to be forsaken. She chose what appeared to her to be the least of the evils, which were forced upon her, to avoid the greater. But she is not to suffer any prejudice from the choice of either. It was " *coacta voluntas,*" to avoid worse consequences. Thus if the husband turns away his wife, it is not to be considered an elopement, and he shall be held to support her. And so it is if he runs away from her. The act of turning her away from him, and running away from her, is to be regarded in the same light, on a question of elopement. *Robinson* v. *Greinold,* 1 Salk. 119. *Etherington* v. *Parrot,* 1 Salk. 118. If she goes away because he turns her out of doors, it is not to be taken as her elopement ;

and so here, it' is not to be taken as her desertion.  And the same reason is applied to the case of a seaman who leaves the ship in consequence of the inhuman treatment of the master.  It shall not be taken for voluntary desertion, but as a justifiable act, and shall not work a forfeiture of the seaman's wages. "Desertion," said Lord Kenyon, "is an answer to a seaman's claim for wages ; but that must be a voluntary act of the seaman's, and not be caused by any act of the captain."  3 Esp R. 270, *Limland* v. *Stephens*.  And so here, was the act of the wife, when she left the house, voluntary or by duress ?  Is this defence to be maintained on the ground of her having wilfully deserted from him, or of her having freely consented to the separation ?  It may as well be said that a traveller consented to give his money to the robber, at the mouth of the pistol, rather than be shot.  It may as well be said that the victim of the pirate voluntarily committed suicide, because she chose to walk overboard upon the plank, and perish in the ocean, rather than be violated, exposed and murdered, on the deck.

It has been suggested that the statute is highly penal, and should be construed strictly ; and I assent to that remark.  I do not intend to apply any enlarged construction, but to execute the will of the legislature, according to my best judgment. They have wisely omitted to set forth what acts and things shall constitute utter desertion.  They have left it to be inferred from the facts to be proved in the cases as they should arise.  And I think, if this case were submitted to the legislature, they would declare that the facts proved did amount to utter desertion on the part of the respondent, within their true intent and meaning.

Let us again briefly recur to the facts.  We find the wife in the street, having been, in effect, turned out of doors by her husband, without any reasonable cause or provocation.  No christian man, I think, will contend that she was not perfectly justifiable in her act of departing.  Having done that outrage, the husband leaves her to go into the world, without house, home or shelter, food or raiment, support, protection or aid, from him ; he forsaking and abandoning her to subsist by charity, or by such other means as she may obtain, by "her own

resources," from thenceforward and for five years consecutively. I call this desertion. I do not intend by construction to put one offence for another; but I think this is *utter* desertion, within the meaning of the statute.

For these reasons, I am of opinion that the libellant is enti tled to a decree of divorce from the bond of matrimony.

*Libel dismissed.*