ALLISON B. HUFF, in equity, *vs.* WILLIAM CURTIS.

### York, 1874.—March 20, 1876.

*Equity. Trial. Evidence.*

In suits in equity, in order to let in parol evidence of the contents of a writing, upon the ground that the writing is lost, it is immaterial at what stage of the proceedings the loss is shown.

Thus, where at the time of taking evidence to prove the contents of a lost writing, its loss had not been shown, and the evidence was then objected to upon that ground, still, if it was afterwards shown, by one of the objecting party's witnesses, that the writing came into his possession, and that he had made diligent search for it and could not find it, the objection will be obviated and the parol evidence regarded as legally in the case.

BILL IN EQUITY to redeem real estate under mortgage.

In defense it was claimed that the plaintiff was not the owner of the right to redeem. It appeared in evidence that the wife of Aaron M. Mellen was once the owner of the equity and that when upon her death-bed she signed a writing relating to her interest in the land. The plaintiff claimed that it was a deed to her husband of the equity of redemption, which interest was afterwards sold on an execution against him, and assigned by the purchaser to the plaintiff. The defendant contended that the writing in question was not a deed to her husband, but a will to her children. To show the character of the writing, the plaintiff took the testimony of the scrivener, which was objected to on the ground that the loss of the writing was not first proved. The defendant afterwards examined the husband, who, on cross-examination, testified that the paper signed by his wife was left in her sick-room, that he supposed it was a will, that it was not delivered to him, that he made search for it some months after his wife's death, but was unable to find it.

*J. Dane & E. E. Bourne,* for the plaintiff.

*J. M. Goodwin & W. F. Lunt,* for the defendant.

BARROWS, J. The lot of land which the complainant seeks by this bill to be allowed to redeem was conveyed in 1852 by Jedediah

Towne to Lavinia, wife of Aaron M. Mellen; and was mortgaged in 1857 by said Aaron and Lavinia, in her right, to said Towne to secure a debt of said Aaron's.

The complainant is the grantee of the purchaser at a sheriff's sale upon execution of all the right in equity of redemption which the said Aaron had therein on the 14th of November, 1866. The respondent holds the mortgage by assignment from said Towne, made in November, 1872. Towne published a notice of foreclosure in December, 1869. But before the three years had expired, and after the assignment to the respondent, the complainant made a demand upon him for an account under R. S., c. 90, § 13, with which the respondent did not comply; and he denies in his answer that Aaron M. Mellen had the right of redemption when it was attached and sold as his, or that it was ever conveyed by said Lavinia to said Aaron as the complainant alleges. All other material allegations in the bill are substantially admitted.

It is upon proof of the making of the alleged conveyance by Lavinia Mellen to her husband prior to November 14, 1866, that the complainant's rights depend. She died May 14, 1866. The respondent contends that no such deed of her right of redemption in the premises was ever executed or delivered by her, or accepted by her husband; that it would defeat her intention, often expressed, that her children should have her property; that if she executed such a conveyance she was not of sound mind; and finally that, in any event, if Mellen took such a conveyance from her, it was subject to a trust in favor of the children, whose right to redeem the defendant concedes, in argument.

That William F. Moody, of Kennebunkport, a justice and notary, accustomed more or less to act as a scrivener in the making of both wills and deeds, was sent for by the husband a few days before the wife's death, to make some kind of a writing for Mrs. Mellen to execute; that he came and that she executed the writing he made, is testified to by the witnesses called by the defendant, as well as by those of the plaintiff.

The character and contents of the instrument are the matters here controverted, the defendant insisting that it was a will in favor of the children, the plaintiff, that it was a deed to her hus-

band. Neither the instrument nor anything purporting to be a copy is produced. If secondary evidence of its contents is admissible, we think there is so decided a preponderance in favor of the hypothesis that the instrument was a deed of the wife's right in this piece of real estate to the husband that we ought to say we are reasonably satisfied that such was the fact. It is also, in our opinion, fully established that Lavinia Mellen, though fatally ill and very feeble at the time of executing the instrument, had legal capacity to make a conveyance of her property, according to the definition of that capacity given in *Hovey* v. *Chase*, 52 Maine, 304; *Hovey* v. *Hobson*, 55 Maine, 256; and *Darby* v. *Hayford*, 56 Maine, 246. We are equally well satisfied that the deed was duly delivered and accepted, and went into the possession of Aaron M. Mellen; nor do we see any cause to believe that the conveyance was subject to any trust whatever.

Some questions are raised as to the admissibility of testimony respecting the mental condition of Mrs. Mellen. But they have been so often passed upon in this state, that we deem any special reference to them here unnecessary. Our conclusion upon this point is based upon the testimony as to the acts and language of Mrs. Mellen, and the various facts and circumstances proved, indicating her mental condition, and not upon the mere expressions of opinion of the various witnesses in regard to it

The defendant's objection to the vitally important testimony of Mr. Moody as to the character and contents of the deed, merits consideration. It cannot be said that the plaintiff had affirmatively shown that he had exhausted all the sources of information in the effort to produce the instrument itself, when he offered the secondary evidence, or that he had established its existence and loss when he propounded to Mr. Moody an interrogatory calling for all his knowledge respecting the conveyance and its execution, which was "objected to by defendant's solicitor as leading and as inadmissible, and not competent to prove the execution of a deed assumed to have been made." The deponent's answer was also "seasonably objected to as not being the best evidence to prove the allegations in the bill, also as incompetent and inadmissible and irrelevant, it not having been previously shown that such a

deed was in existence or was lost, or that any effort had been made to procure it, or any notice given to any one to produce it."

The objection is insisted on in argument, and it is claimed that it should be considered in view only of the proceedings which had been had, and of the testimony which had been produced in the case when Moody's deposition was taken. But we think the objection is to be passed upon in view of the case and evidence as they stand at the time of the publication of the testimony; and if, upon the proceedings had and the whole evidence offered, it then appears that the secondary evidence is admissible to prove the contents of the writing, the objection to it ought not to be sustained for want of the production of the requisite proof before or at the time of the taking of the deposition. How much diligence and effort must be used to secure the production of a lost deed before parol evidence of its contents can be deemed admissible depends of course very much upon the ever varying circumstances of the cases in which it is offered. It must always be enough to repel conclusively the suspicion that the party resorts to secondary evidence because the best evidence would not be found favorable to his position.

It is material then to ascertain to whose hands the document is last traced, and which party, if either, is most likely to know what has become of it, or to be able to procure it, if it is still in existence. Upon that point in the present case we are not left in doubt. Aaron M. Mellen, at whose request the instrument was drawn, and into whose possession we think it went immediately after its execution, is produced as a witness by the defendant, and gives testimony from which the defendant's counsel argues that the instrument was not a deed but a will; and, touching the whereabouts of the document in question, he swears to that which, whether it commands belief or not, fully accounts for the absence of the writing, and demonstrates the futility of any effort on the part of the plaintiff to produce it. The plaintiff puts in the testimony of all those who could be supposed to know what was done with the instrument after it was executed, except Aaron M. Mellen and his daughter, at that time a young girl, and they are both called as witnesses by the defendant. The former says that he

never accepted or had in his possession the paper which he was so eager to have drawn; that the last he saw of it was in his wife's sick-room; that he took no pains at first to ascertain what became of it, but made thorough search the next fall, and has been unable to find it.

As above remarked, the testimony produced by the plaintiff satisfies us that the instrument went into the possession of this witness. Subsequent events have made it for the interest of himself and his family to suppress it. Whether it is now in existence or not, it is obvious from the testimony which he gives, that the plaintiff would call in vain for its production. Without the testimony of this witness the plaintiff had not laid the proper foundation for the introduction of parol evidence of the contents of the instrument. With it, (and so long as it is in the case it is immaterial by which party it is produced,) we think it sufficiently appears that a writing of vital importance in the determination of the rights of these parties was once in existence and cannot be procured by the plaintiff to be used as evidence; and hence that he might properly offer secondary evidence of its contents.

Upon the whole we find it proved to our reasonable satisfaction that his wife's right of redemption was conveyed to Aaron M. Mellen previous to November 14, 1866, when it was attached as his; and that it had been regularly transferred to the plaintiff, who is in consequence entitled to redeem.

*Decree accordingly.*

*Master to be appointed.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.