Joseph J aspan, J.
The defendants, Weldon Watkins and Christine Watkins, husband and wife move before trial to *871 suppress intercepted telephone conversations between them upon the ground that the same is privileged because of their marital relationship.
The issue raised could be more easily determined after an offer of proof during the course of a trial at which time the court could consider such other relevant issues as the possible presence of third persons, the location and purpose of the telephone which was not listed in the name of either movant, whether the defendants or either of them intended to transmit the essence of the communication to an alleged coconspirator or some other person and the significance of the words used in the context and time sequence of the transactional events.
I am therefore withholding any ruling upon admissibility until the testimony is offered at the trial. However, two issues inherent in the motion can be resolved at this time.
1. Would the introduction of the taped conversations constitute nonconsensual testimony by the respective spouses as against each other?
2. Does the marital privilege extend to conversations advancing on-going criminal activities by both husband and wife as distinguished from an admission or confession by one to the other?
The movants and two others are charged in an indictment with conspiracy in the third degree, a class A misdemeanor, and with acting in concert and in aid of each other with respect to the substantive crimes of promoting gambling in the first degree and possession of gambling records in the first degree, class E felonies.
The evidence against the defendants was apparently divulged in a significant measure through the use of a court-approved eavesdropping warrant permitting an intercept of telephone communications originating from a designated instrument at the home of the defendant Clark. No challenge is presently before the court with respect to the warrant or the manner in which it was executed. At an audibility hearing, defense counsel became aware of the subject conversations and thereafter instituted this motion to suppress.
CPLR 4502 (subd [b]) applies to criminal as well as civil matters and reads as follows: "Confidential communication privileged. A husband or wife shall not be required, or, without the consent of the other if living, allowed, to disclose a *872 confidential communication made by one to the other during marriage.”
The privilege extends to "more than mere oral communications or conversations between husband and wife. It includes knowledge derived from observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing” (People v Daghita, 299 NY 194, 198-199) and may even consist of letters between the parties (People v Truck, 170 NY 203, 214).
DO THE INTERCEPTED CONVERSATIONS CONSTITUTE TESTIMONY?
A relevant concern on this motion is CPL 700.20 (subd 2, par [c]) which provides that an ex parte application for an eavesdropping warrant must contain, "(c). A statement that such communications are not otherwise legally privileged”.
The obvious import of this statutory provision is that privileged communications may not be intercepted and if this minimization requirement is not observed, the ensuing conversations and information derived therefrom may not be used as part of the evidence-in-chief by the People.
In addition, I hold that the privilege would in any event extend to intercepted telephone communications. To conclude otherwise would be to approve intrusions upon the most private of conversations and expose those confidences which are exchanged only because of the trust, confidence and loyalty between the marital partners. Such a result would be contrary to public policy.
PRIVILEGE AS TO CRIMINAL ACTIVITY
Does privilege exist as to conversations between married persons which advance a criminal activity? I hold that it does not.
There are no reported cases in this State dealing directly with this issue, but there are other precedents and striking analogies which support that conclusion.
In Texas and Kentucky it has been held that when a husband and wife are coconspirators or when evidence justifies such a conclusion, a declaration of the husband or wife at the time of the act in question is not privileged. (Goforth v State, *873 100 Tex Cr Rep 442; Thompson v State, 77 Tex Cr Rep 417; Gill v Commonwealth, 374 SW2d 848, 851 [Ky].)
In United States v Kahn (471 F2d 191, revd on other grounds 415 US 143) the court, en banc, was presented with facts almost identical with those found in this case. A court authorized wiretap in connection with an investigation of gambling activities intercepted a conversation between spouses relating to the commission of a crime. In reversing a District Court order suppressing the conversation, the court wrote (pp 194-195): "We agree with the government. If the intercepted conversations had to do with the commission of a crime and not with the privacy of the Kahn marriage, the judge’s ruling is erroneous. Society has an interest in protecting the privacy of marriage because invasion of the privacy endangers the family relationship. The privilege has been interpreted in some jurisdictions to exclude conversations between spouses about business, since their role as spouses is merely incidental. That rule reinforces the exception to the privilege; '[w]here both spouses are substantial participants in patently illegal activity, even the most expansive of the marriage privileges should not prevent testimony’. * * * We realize that 'the law of evidence has demonstrated a degree of solicitude toward the intimacy of marriage not manifested with regard to other protested relationships,’ but the conversations before us between the Kahns were with respect to ongoing violations of Illinois gambling laws. We hold therefore that the judge erred in suppressing those conversations.”
Kahn is predicated in part upon the prevalent rule in attorney-client relationships.
In this State it has been held that the attorney-client privilege does , not extend to communications with respect to current or future criminal activities. (People ex rel. Vogelstein v Warden of County Jail, 150 Misc 714, affd 242 App Div 611; People v Farmer, 194 NY 251, 269.)
In Farmer the Court of Appeals included a telling sentence from which it might be concluded that rules governing attorney and client relationships pertain in this area to marital confidences. It wrote (p 269): "The seal of personal confidence can never be used to cover a transaction which is in itself a crime.” (Emphasis added.)
The use of the word (<never” cannot be regarded as an accident of phraseology. It is true that the relationship between attorney and client is of limited duration and purpose *874 and can be thus distinguished from the marital relationship. But the public policy which militates against suppression of discussions of on-going crimes should and does embrace both and limits the privilege.
An analogy may also be drawn with respect to the discussions between spouses as to ordinary business matters. Our courts have held such discussions are not privileged. (Parkhurst v Berdell, 110 NY 386; Norris v Lee, 136 App Div 685; Johnson v Johnson, 25 AD2d 672.)
It could be argued that this rule should not apply to illegal business matters since such activities uniquely depend upon a measure of secrecy and confidence between the married coconspirators.
But such reasoning would require a finding that the joint participation of a husband and wife in the commission of a crime would protect and strengthen the marital bond. Such a conclusion cannot be justified by experience or public policy. The marriage vows are not founded on such a premise.
Accordingly, I find that the privilege does not extend to communications between spouses in which they are jointly advancing a criminal conspiracy or aiding each other in the commission of an on-going crime.