**STATE of Maine**

v.

**Clarence G. SMITH, Jr.**

Supreme Judicial Court of Maine.

April 19, 1978.

Thomas A. Berry (orally), Asst. Dist. Atty., Bath, for plaintiff.

Hart & Stinson, P. A. by Ronald W. Lupton (orally), Bath, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

The defendant, Clarence G. Smith, Jr., was convicted of breaking and entering with intent to commit a larceny[1] by a Sagadahoc County Superior Court jury. On appeal the defendant claims that the presiding Justice erred in allowing the defendant's wife to testify as to certain "marital communications" inadmissible under 15 M.R.S.A. § 1315. We deny the appeal.

On the morning of November 19, 1974, the defendant, his wife, Karen Smith, and Robert Gilley met in a Brunswick, Maine restaurant where they planned a break into a private dwelling in Bowdoinham. Leaving the restaurant, Mrs. Smith drove the defendant and Gilley to a place near the dwelling and then parked the vehicle in a nearby dump site. Mrs. Smith remained in the automobile while Gilley and her husband broke into the dwelling. Following the break, the defendant, but not Gilley, rendezvoused with Mrs. Smith at the dump site. Inside the automobile the defendant revealed two stolen objects, a gun and a camera, to his wife. All three were subsequently charged with the break. Gilley was convicted and testified against the defendant. Although she received no formal grant of immunity, Mrs. Smith was not indicted and also testified on behalf of the State.

Following a voir dire hearing in which Mrs. Smith was examined and cross-examined, the Superior Court ruled that the marital communication privilege did not prevent Mrs. Smith from testifying that her husband showed her the stolen objects. Finding that the defendant's conduct was a "communication," the presiding Justice nevertheless concluded that since the conduct occurred in a "public area" and not "in the privacy of their bedroom or the privacy of their home," the communication was not privileged. For different reasons, we agree with the conclusion reached by the Superior Court.

■ Section 1315 of 15 M.R.S.A. provides in pertinent part: "The husband or wife of the accused is a competent witness except in regard to marital communications." Interpreting this provision in *State v. Benner*, Me., 284 A.2d 91 (1971), we held that 15 M.R.S.A. § 1315 was not a marital disqualification but a privilege which if properly invoked would protect confidential marital communications from disclosure. In ascertaining whether a communication fits within the rubric of the marital privilege, this Court stated:

We now decide, therefore, that conduct of a spouse—(whether by use of words, or otherwise, to convey information, attitudes or emotional states)—is *capable* of falling within the scope of the privilege which protects against testimonial disclosure by one spouse in a criminal proceeding in which the other spouse is the accused, *only if confidentiality* between husband and wife is an *actual inducing* factor of the conduct. Hence, if confidentiality confined to husband and wife has not been purposefully and expressly sought or invoked, it must appear, as a minimally necessary condition, that the spouse whose conduct is sought to be protected by claim of privilege must have acted in *reliance* upon an *expectancy, reasonable* under all the circumstances, that the conduct itself, or other consequences which it might convey, will be transmitted *only* to the spouse and *to no other person* (such that a *confidentiality confined to husband and wife* can be a reasonable possibility under the circumstances). *Id.* at 109. (emphasis in original).

## I.

■ To determine if the defendant's conduct was a confidential marital communication, we first face the issue of whether nonverbal actions can constitute a "commu-

---

1. 17 M.R.S.A. § 754.

nication" for the purposes of our marital privilege law. In *State v. Benner, supra* at 109, we implied without deciding that "conduct other than exchanges through use of words" could constitute a "communication" for the purposes of 15 M.R.S.A. § 1315.

In *Holyoke v. Estate of Holyoke*, 110 Me. 469, 474, 87 A. 40, 43 (1913), the Court noted that there was "some contrariety of opinion as to what constitutes a confidential communication . . . ." In *Bond v. Bond*, 127 Me. 117, 141 A. 833 (1928), the Court adumbrated its understanding of "confidential communications" concomitantly shedding light on the meaning of the term "communications."

> Marital *secrets* induced by the relations thus existing, *confessions* and *admissions* confidential in their nature and *all communications* that can be said to be induced by the confidence presumed to be inherent to the marital relations are privileged . . . . *Id.* at 127, 141 A. at 837. (emphasis supplied).

Although "secrets," "confessions," and "admissions" may connote oral discourse, *Bond* does not confine the privilege to the spoken word but extends it to "all communications" induced by the marital relationship.

Additional support for the proposition that nonverbal conduct can be privileged under 15 M.R.S.A. § 1315 is found in an examination of the purpose behind the marital privilege law. In *State v. Benner, supra*, we concluded after a thorough examination of our prior case law that the privilege for marital communications is

> predicated upon a concern to achieve the intimacy and warmth between a husband

and wife which would result from the encouragement of a sharing of confidentiality between them. *Id.* at 108.

Since the purpose behind the marital privilege is to protect and encourage the sharing of confidences between husband and wife, there seems little justification for confining the privilege to conversations. C. McCormick, Law of Evidence § 79, at 163 (2nd ed. 1972); 8 Wigmore, Evidence § 2337, at 657–58 (McNaughton rev. 1961). Acts as well as descriptive words can communicate a meaning and impart a trust.[2] *United States v. Smith*, 533 F.2d 1077 (8th Cir. 1976); *United States v. Lewis*, 140 U.S.App.D.C. 40, 433 F.2d 1146 (1970); *Sexton v. Sexton*, 129 Iowa 487, 105 N.W. 314 (1905); *People v. Daghita*, 299 N.Y. 194, 86 N.E.2d 172 (1949).

In the instant case there can be little doubt that when the defendant revealed the stolen objects to his wife he was imparting a confidence as clearly as if he had told his wife, "I have stolen a gun and a camera." Although we have no occasion in this opinion to consider whether the outer contours of the term "communication" extend beyond the type of fact pattern herein presented,[3] we do hold that where as here conduct by a spouse can be reasonably interpreted as intending to convey a message to the other spouse, a marital communication has occurred.

## II.

As we made clear in *State v. Benner, supra*, not all marital communications fall within 15 M.R.S.A. § 1315. To be privileged, the marital communication must be

---

**2.** Our rules of evidence similarly recognize that nonverbal conduct can constitute hearsay. M.R.Evid. 801(a) states:

> A "statement" is (1) an oral or written assertion or (2) *nonverbal conduct of a person, if it is intended by him as an assertion.* (emphasis supplied).

**3.** Where the spouse's conduct cannot be readily translated as a substitute for speech, the courts are in marked disarray as to if and under what circumstances the conduct constitutes a "communication." *Compare People v. Daghita, supra, and Menefee v. Commonwealth*, 189 Va. 900, 55 S.E.2d 9 (1949), which hold that a communication includes all information and

knowledge made known to one spouse by the other by reason of the marital relation and which would not have been imparted except for the confidence so existing, *with Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), *and People v. Simpson*, 39 Ill.App.3d 661, 350 N.E.2d 517 (1976), which restrict the term to expressions intended by one spouse to convey a meaning to the other spouse. There appears to be a similar lack of harmony between two distinguished treatises. *Compare* C. McCormick, *supra* at 163–64, *with* 8 Wigmore, *supra* at 658. For an extended discussion, *see* Annot., 10 A.L.R.2d 1389 (1950).

confidential. A question arises, explicitly left open in *State v. Benner, supra* at 109, as to which party has the burden of establishing the confidential or nonconfidential nature of the marital communication. Possible confusion at the voir dire hearing prompts us to now answer that question.

In *Benner* we noted that confidentiality can be either expressly invoked by one spouse when communicating to the other or implied by the circumstances surrounding the communication. In the unusual situation where there is an express invocation of confidentiality which the circumstances do not belie, the marital communications will be privileged. In the more typical case, no express invocation of confidentiality will occur; nevertheless, from the nature of the communication and the surrounding circumstances, it is apparent that the spouses assume that the communication is and will remain confidential. Because of this unexpressed assumption of confidentiality, 8 Wigmore, *supra* § 2336, at 648, argues:

> It would seem proper to presume that *all* marital communications are by implication confidential and the contrary intention must be shown by the circumstances of any given instance. Looking at the habits of married persons and the infrequency of express injunctions of secrecy, this implication of confidence seems more consonant with the facts of life. (emphasis in original).

Requiring the spouse who claimed the privilege to show that he or she intended the communication to be confidential would introduce significant problems of proof. Moreover, to the extent that it could be shown, it would undercut the purpose behind the privilege for it would usually force the spouses to come forth and repeat that which was meant to be confidential.

Following the near universal rule, *see Wolfle v. United States*, 291 U.S. 7, 54 S.Ct.

279, 78 L.Ed. 617 (1934); *Sexton v. Sexton, supra; Allen v. Allen*, 60 S.W.2d 709 (Mo. App.1933), we hold that all marital communications are presumed to be confidential, and the party seeking to introduce the evidence must overcome the presumption. In the instant case, once the defendant established that he had "communicated" with his wife,[4] the burden was then upon the State to show that either because of the nature of the communication or the circumstances under which it was made the communication was not intended to be, or should not be considered, confidential.

### III.

Turning to the Superior Court's rationale for permitting the defendant's wife to testify, we cannot accept the distinction between a "public" dump site and a "private" house as a per se reason for concluding that the marital communication was not confidential. In *State v. Benner, supra*, we held that where there had not been an express invocation of confidentiality, the party claiming the privilege

> must have acted in *reliance* upon an *expectancy, reasonable* under all the circumstances, that the conduct itself, or other consequences which it might convey, will be transmitted *only* to the spouse and *to no other person* (such that a *confidentiality confined to husband and wife* can be a reasonable possibility under the circumstances). *Id.* at 109. (emphasis in original).

Although the location of the communication may be probative of whether the spouse intended the communication to be confidential, *cf. State v. Hamm*, Me., 348 A.2d 268, 273 (1975), the inquiry in all cases should focus on the spouse's reasonable expectation of confidentiality. As was said in the analogous fourth amendment context by the United States Supreme Court in *Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967):

---

**4.** Although all statements between husband and wife are presumed to be confidential, the same cannot be said of nonverbal conduct. *United States v. Lewis, supra; People v. Burton*, 6 Ill.App.3d 879, 286 N.E.2d 792 (1972),

*cert. denied*, 411 U.S. 937, 93 S.Ct. 1917, 36 L.Ed.2d 399 (1973). Where conduct is involved, the defendant must establish that the conduct should be construed as a communication before the burden falls to the State.

What a person knowingly exposes to the public, even in his own home or office, is not the subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. (citations omitted).

It is unclear whether any other person was in the dump site when the defendant returned. In any event, a fair reading of the record indicates that no one else was in the immediate vicinity of the vehicle. The defendant waited until he was in the privacy of the automobile before he disclosed the gun and the camera to his wife. Evidently, the defendant went to great lengths to insure that no one but his wife would see the stolen objects. His conduct in the dump site was entirely consistent with the objective expectation of confidentiality required by 15 M.R.S.A. § 1315.

Even though the defendant maintained a reasonable expectation of confidentiality in the dump site, there are two reasons why his conduct was not privileged.

The first stems from the uncontroverted testimony of Robert Gilley that he saw the defendant leave the house with the gun and the camera. The defendant was aware, or should have been aware, that Gilley would so observe him. Allowing Gilley to thus observe the objects that the defendant subsequently showed his wife unambiguously indicates that the defendant did not intend his communication to be confidential.

■ This conclusion follows from the well-established principle that a communication from one spouse to another in the presence of a third party overcomes the presumption of confidentiality. *Burrill v. Giles*, 119 Me. 111, 109 A. 390 (1920); *Walker v. Sanborn*, 46 Me. 470 (1859); *Wolfle v. United States, supra.*

In *State v. Benner, supra*, we found that the presence *inter alia* of a sleeping third party vitiated whatever confidentiality may have otherwise existed. Under the facts of that case, the defendant was or should have been aware that his son might have awakened and hence, in communicating to his wife, the defendant acted without a reasonable expectation that only his wife would learn of his conduct.

To overcome the presumption of confidentiality, the third party need only be constructively present when husband and wife are communicating. In *People v. Burton, supra*, for example, the defendant's communication consisted primarily of counting out money in front of his wife. Since he repeated the same act in front of his brother-in-law the following day, it was evident that he did not intend his marital communication to be confidential. That the third party would not divulge the communication is not sufficient to maintain the confidentiality necessary for the marital privilege. In *State v. Benner, supra*, the third party was the defendant's son, well within the intimacy of the family circle. The defendant's secretary negated the presumption of confidentiality in *Wolfle v. United States, supra*, notwithstanding that conversations between employer and secretary are meant to be private. More to the point is *People v. Melski*, 10 N.Y.2d 78, 217 N.Y.S.2d 65, 176 N.E.2d 81 (1961), where the presence of the defendant's accomplices overcame the presumption of confidentiality. The New York Court of Appeals observed:

> [W]hen the communication is made in [the accomplices'] presence, we prefer to rely on the presumption that it was not deemed a confidence between *husband and wife*, regardless of the fact that all present may have expressly sworn themselves to secrecy. While the acts and statements of the visitors may be deemed confidences between accomplices, they by no means come within the husband-wife privilege. *Id.* at 83, 217 N.Y.S.2d at 69, 176 N.E.2d at 84–85. (emphasis in original).

From these cases, it is evident that the relationship between the third party and the spouse or spouses is typically not significant. The actual or constructive presence of a third party will overcome the presumption that the spouses intended their communication to remain confidential.

■ In the instant case, Smith and Gilley committed the break together. Smith knew or should have known that Gilley would observe him leaving the house with the gun and the camera. Because Gilley had already seen what would later be communicated to the defendant's spouse, his constructive presence rebutted the presumption of confidentiality, notwithstanding that Gilley may not or would not have revealed this communication to any other person.[5]

There is another, independent, reason stemming from the circumstances under which the communication was made which makes the marital privilege inapplicable in this case. We have recognized that not all private communications between spouses are privileged communications. *Bond v. Bond, supra.* The privilege does not extend to every quotidian communication between spouses but only to those that would not have been made but for the absolute confidence in, and induced by, the marital relationship. Where the purpose behind the marital privilege is not being served, we have not hesitated to permit disclosure.

In *Bond v. Bond, supra,* abusive language was not privileged since it was not "warranted or induced by the marital relations." *Id.* 127 Me. at 127, 141 A. at 837. Similarly in *Holyoke v. Estate of Holyoke, supra,* the Court found that where the parties were living apart under articles of separation and the one communicating was known to be actively hostile to the other spouse, the privilege was inapposite. The *Holyoke* Court stated:

[S]ince the rule is based upon the necessity of preserving the confidence which

must exist in order to create and maintain mutual happy relations and fulfill the purposes of marriage, we think it should not apply [under these circumstances]. *Id.* 110 Me. at 474, 87 A. at 43–44.

In the case at bar, the defendant's wife played an active role in the breaking and entering. She was present when the crime was being planned, drove the defendant and Gilley to a place near the dwelling, waited for the defendant, and then assisted in his escape. For her participation, she was subject to prosecution as a principal. *See State v. Bellanceau,* Me., 367 A.2d 1034 (1977); *State v. Simpson,* Me., 276 A.2d 292 (1971); *see also State v. Mower,* Me., 317 A.2d 807 (1974).

We do not believe that the purpose behind the marital privilege is served by permitting spouses engaged in criminal activity to raise a shroud of secrecy around their communications regarding that activity. Such communications do not foster the type of honesty and mutual trust upon which fulfilling marital relations ought to be predicated.

This is not a case where one spouse confesses to the other spouse a crime that he or she has committed. In such a situation, the admission may well be prompted by the affection, confidence, and loyalty engendered by the marital relationship and could reasonably be interpreted as a confidential marital communication.[6] *United States v. Van Drunen,* 501 F.2d 1393 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974); *Delk v. Commonwealth,* 285 S.W.2d 169 (Ky.1955); *cf. Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951).

**5.** It is not clear from the record at the voir dire hearing whether the presiding Justice knew that Gilley observed or was likely to observe the defendant leaving the house with the gun and the camera. In any event, this fact was conclusively established during the trial which cures any error that may have otherwise existed. *Huff v. Curtis,* 65 Me. 287 (1876). Since it is presumed that marital communications are privileged, it would be the better practice for the State, in those circumstances wherein it wishes to rely upon the presence of a third party to overcome the presumption of confi-

dentiality, to introduce relative supporting evidence at the voir dire hearing.

**6.** The New York courts have made a similar distinction between an unfounded accusation of adultery or abusive language which is not privileged, *Poppe v. Poppe,* 3 N.Y.2d 312, 165 N.Y.S.2d 99, 144 N.E.2d 72 (1957); *De Mili v. De Mili,* 120 N.Y. 485, 24 N.E. 996 (1890), and an admission or confession of adultery which would be privileged, *Lanyon's Detective Agency v. Cochrane,* 240 N.Y. 274, 148 N.E. 520 (1925). *See People v. Melski, supra.*

It must be remembered that a privilege is an exception to the general rule which requires that all relevant information be disclosed so that justice may not be thwarted. *In re Investigation of World Arrangements with Relation to the Production, Transportation, Refining & Distribution of Petroleum*, 13 F.R.D. 280 (D.D.C. 1952). As with other privileges, the marital privilege "suppresses relevant testimony, and should be allowed only when it is plain that marital confidence cannot otherwise reasonably be preserved." *Wolfle v. United States, supra*, 291 U.S. at 17, 54 S.Ct. at 281. Where, as in this case or with abusive language between spouses, the purpose behind the marital privilege would not be served, the free flow of relevant evidence necessary for the proper functioning of our adjudicatory process should not be needlessly impeded.

We therefore join other federal and state courts in holding that when both spouses are active participants in ongoing criminal conduct, communications in furtherance of that conduct are not privileged confidential marital communications. *United States v. Kahn*, 471 F.2d 191 (7th Cir. 1972), *rev'd on other grounds*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *Gill v. Commonwealth*, 374 S.W.2d 848 (Ky.1948); *People v. Watkins*, 89 Misc.2d 870, 393 N.Y. S.2d 283 (1977); *see also United States v. Van Drunen, supra; Fraser v. United States*, 145 F.2d 139 (6th Cir. 1944), *cert. denied*, 324 U.S. 849 (1945); *Gutridge v. State*, 236 Md. 514, 204 A.2d 557 (1964).

The entry must be:

Appeal denied. Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J., concurring.