GUTRIDGE *v.* STATE

[No. 47, September Term, 1964.]

*Decided November 13, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*James W. Murphy* for the appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Robert V. Lazzaro, State's Attorney* and *Assistant States Attorney,* respectively, *for Baltimore City,* on the brief, for the appellee.

HENDERSON, C. J., delivered the opinion of the Court. PRESCOTT, J., concurs in the result.

The appellant was convicted, as a second offender, of control of narcotics. He contends that the testimony of his wife should have been excluded, since it disclosed a "confidential communication made by the one to the other," in violation of Code (1957), Art. 35, sec. 4. He further contends that the narcotics put in evidence against him were obtained as a result of an illegal search.

The facts are virtually undisputed. On June 22, 1963, the appellant was in the custody of the Baltimore County Police, charged with assault on his wife, Janice. Another prisoner, Marvin Offield, testified that Gutridge asked him to call Mrs. Gutridge to pick up some articles at the train station, and told him "if the police got a hold of them he could get twenty years,"

Offield informed the officers, who went to the home of Mrs. Gutridge. She produced the key to a station locker that her husband had given her, accompanied them to the station, opened the locker and took out a paper bag containing narcotics, which she opened, and handed the contents to the officers. At the trial she testified, over objection, that while she and her husband were en route to the police station in the police car, following his assault on her, he slipped a ring of keys into her pocketbook without any explanation. One of the keys had a tag identifying it as being the key to locker No. 8006, Camden Station. She testified that she accompanied the officers to the station, opened the locker, looked into the paper bag containing narcotics and narcotics paraphernalia, and handed the contents to the officers.

Although the appellant said nothing to his wife at the time he slipped the keys into her handbag, his obvious purpose was to prevent the police from finding them. In his subsequent attempted message to her through a trusty, Offield, it was his purpose to have her remove and secrete or destroy the contents of the locker. But Offield informed the police, and when the police asked her for the keys her husband had given her, she voluntarily accompanied them to the station.

At the outset, it seems clear that there was no breach of privilege involved in the information given to the police by Offield. The message sought to be sent to the appellant's wife through another cannot be regarded as confidential. Cf. *Master v. Master,* 223 Md. 618, 623, and cases collected in 97 C.J.S. *Witnesses,* § 272. See also *Pereira v. United States,* 347 U. S. 1; *Wolfle v. United States,* 291 U. S. 7, 17; *People v. Melski,* 10 N. Y. 2d 78, 176 N. E. 2d 81; *McCormick on Evidence,* § 84; Wharton, *Criminal Evidence* (12th ed.) § 831. The act of dropping the keys in her handbag, in and of itself, can hardly be deemed a "communication," although the courts are divided on the point. See *McCormick on Evidence,* § 83 and cases cited. See also *State v. Dixson,* 80 Mont. 181, 203, 204, 260 P. 138, 146, and note 10 A.L.R. 2d 1389. Even the cases that take the more liberal view seem to recognize that there must be some information transmitted by the act. Here the wife knew only that she was given custody of certain keys. Presumably she did not even know that one of the keys was to a locker at Camden Sta-

tion, until she was informed of that fact by the officers. Her possession of the key gave her constructive possession or dominion over the locker and its contents. In this respect the case is analogous to *Bellam v. State,* 233 Md. 368, 371, where we held that the joint ownership of premises gave the wife a right to consent to a search by the officers.

In the instant case there was no search. The wife herself opened the locker, and when she had confirmed the fact that it contained narcotics (the police had learned from the trusty that it contained contraband, the mere possession of which might lead to a long sentence), she voluntarily turned over the contents to the officers. We find no breach of confidential relations in her testimony as to what she did.

We may note that some authorities advocate an exception to the privilege, where its invocation would protect acts in furtherance of a crime or fraud. See *McCormick on Evidence,* § 83, p. 171, note 52 Journal of Criminal Law 74, 79, and *Fraser v. United States,* 145 F. 2d 139, 143 (6th Cir.). In the Uniform Rules of Evidence, Rule 28(2)(e), it is provided: "Neither spouse may claim such privilege * * * if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the communication was made, in whole or in part, to enable or aid anyone to commit or to plan to commit a crime or a tort." Cf. Model Code of Evidence, Rule 217. We find it unnecessary to decide the point here, since we base our decision on the narrow ground that her action in surrendering the narcotics to the officers was not the disclosure of a confidential communication. Moreover, it is clear that before she opened the locker the officers had probable cause to believe that it contained contraband, without any disclosure on her part. Cf. *Sartain v. United States,* 303 F. 2d 859, 862 (9th Cir.) and cases cited. At that time the police also knew that the appellant had been previously convicted of a narcotics offense, that he had needle marks on the arm, and that he had checked baggage at Camden Station.

What we have said disposes of the contention that there was an illegal search of the locker. There was no search and in any event the officers had probable cause to search and seize its contents. The subsequent search of his luggage, even if illegal,

was not prejudicial since it was fruitless, and no incriminating evidence was obtained and none was offered. The baggage checks in the possession of the accused at the time of his arrest on another charge were only used to connect the accused with the train station where the locker was located. Cf. *Braxton v. State,* 234 Md. 1, 7.

*Judgment affirmed.*

PRESCOTT, J., concurs in the result.