**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Irving KAHN and Minnie Kahn,**
**Defendants-Appellees.**

**No. 71-1931.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1972.

Decided Oct. 31, 1972.

Rehearing and Rehearing En Banc
Denied Jan. 29, 1973.

James R. Thompson, U. S. Atty., Allan E. Lapidus, Chicago, Ill., for plaintiff-appellant.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for defendants-appellees.

Before KNOCH, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

The government has appealed [1] from an order of a district judge suppressing as evidence conversations between Irving and Minnie Kahn, husband and wife, gathered from wiretaps authorized by a district judge's order permitting interception of their telephone communications by virtue of the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[2] We affirm in part and reverse in part.

On March 20, 1970 the judge issued the wiretap order on application of the government, through a specially designated Assistant Attorney General, supported by an FBI agent's affidavit.[3] The order authorized interception of Irving Kahn's conversations with "others as yet unknown" using the two Kahn home telephone numbers. Minnie Kahn was not named in the order. The government presumed the order authorized interception of her conversations as a member of the class of "others as yet unknown." The judge accepted the FBI status report he required under authority of § 2518(6) of the Act [4] and presumably approved the government's interpretation of the order.

The order cautioned that execution of the order should be as "soon as practicable" and "in such a way as to minimize the interception of communications not otherwise subject to interception under Chapter 119 of Title 18, United States Code,[5] and must terminate upon attainment of the authorized objective or, in any event, at the end of fifteen (15) days from the date of this order." On March 25, 1970 the government reported interception had been terminated by at-

---

1. 18 U.S.C. § 3731, 18 U.S.C. § 2518(10)(b).

2. 18 U.S.C. §§ 2516 and 2518.
   On the basis of the same affidavit supporting the eavesdrop order, the district judge the same day authorized use of a Pen Register. No question is raised in the appeal with respect to the Pen Register.

3. 18 U.S.C. §§ 2516 and 2518.

4. (6) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

5. 18 U.S.C. §§ 2510–2520.

tainment of the objective. The report [6] stated the objective was attained by gathering information, *inter alia,* that on March 21, 1970 Irving Kahn called his wife from Arizona and discussed gambling wins and losses, and that the same day Minnie Kahn called a known gambling figure twice and discussed numbers and amounts of bets placed and the identity of the bettors by numbers.

On February 24, 1971 Irving and Minnie Kahn were indicted for using a telephone "facility in interstate commerce" with intent to promote gambling in violation of Illinois law. On April 27, 1971 the Kahns filed motions to suppress the wiretap evidence pursuant to 18 U.S.C. § 2518(10)(a).[7] The joint motion asserted that the Kahns' Fourth and Fifth Amendment rights were violated by the wire taps. It also challenged the sufficiency of the application for the order, the necessity for the order and the FBI use of telephone company records allegedly in violation of 47 U.S.C. § 605 and 18 U.S.C. § 2515, the duration of the order, and its excessive breadth. The Kahns also challenged the order for its lack of directions for minimizing interception, and alleged that it violated the marital privilege under the Ninth Amendment, the common law and 18 U.S.C. § 2517(4).[8]

The judge [9] found that the Attorney General's application for the intercepting order was adequately supported by the FBI agent's affidavit and that the order was valid and enforceable under 18 U.S.C. § 2518(3–5).[10] The judge further found that the statute authorizing

6. On March 10, 1971 an order was entered authorizing the FBI, in possession of tapes from the eavesdropping, to break the seal, make copies of recordings and supply the defendants' counsel with a copy.

7. (10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
   (i) the communication was unlawfully intercepted;
   (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
   (iii) the interception was not made in conformity with the order of authorization or approval.
Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived there-

from as the judge determines to be in the interests of justice.

8. (4) No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

9. The criminal case was assigned to a district court judge other than the judge who authorized the wiretap.

10. (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—
   (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
   (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
   (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
   (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in con-

the wiretap order was "undoubtedly" constitutional when limited to conversations participated in by "Irving Kahn with persons unknown at the time." However, the judge, without hearing testimony, suppressed any conversations "exclusively" between Irving and Minnie Kahn as being within the marital privilege doctrine as applied through 18 U.S.C. § 2517(4). The judge also decided that the wiretap order did not authorize interception of Minnie Kahn's conversations. The government's appeal followed.

## I.

The government contends that the judge erroneously applied the marital privilege rule because (1) Minnie Kahn was not testifying against her husband, and (2) the privilege in this proceeding must give way to the public interest in discovering the truth about crime, and in enforcement of criminal law.

■ We agree with the government. If the intercepted conversations had to do with the commission of a crime and

> nection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.
>
> (4) Each order authorizing or approving the interception of any wire or oral communication shall specify—
>
> (a) the identity of the person, if known, whose communications are to be intercepted;
>
> (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;
>
> (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;
>
> (d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and
>
> (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.
>
> (5) No order entered under this section may authorize or approve the inter-

not with the privacy of the Kahn marriage, the judge's ruling is erroneous. Society has an interest in protecting the privacy of marriage because invasion of the privacy endangers the family relationship. The privilege has been interpreted in some jurisdictions to exclude conversations between spouses about business, since their role as spouses is merely incidental.[11] That rule reinforces the exception to the privilege; "[w]here both spouses are substantial participants in patently illegal activity, even the most expansive of the marriage privileges should not prevent testimony." [12]

This court recently, in United States v. Doughty, 460 F.2d 1360, 1364 (7th Cir. 1972), said:

> The Doughtys were in the unlawful enterprise together, and we think it highly unlikely that the court's admission of the testimony [of an agent] . . . militated against their domestic peace or offended the public interest which the rule in *Hawkins* [358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958)] sought to protect.

> ception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

11. Annot., 4 A.L.R.2d 835.

12. Note, Future Crime or Tort Exception to Communications Privilege, 77 Harv. L.Rev. 730, 734 (1964).

That language reflects Exception (2)(e) of Uniform Rule of Evidence 28; see also United States v. Pugliese, 153 F.2d 497, 500 (2nd Cir. 1945).[13] We realize that "the law of evidence has demonstrated a degree of solicitude toward the intimacy of marriage not manifested with regard to other protected relationships,"[14] but the conversations before us between the Kahns were with respect to ongoing violations of Illinois gambling laws. We hold therefore that the judge erred in suppressing those conversations.

The cases cited by the Kahns do not aid them. The point here was not raised in Wolfle v. United States, 291 U. S. 7, 54 S.Ct 279, 78 L.Ed. 617 (1934), and there was no evidence in that case of dual participation in crime. In Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951), the husband refused to disclose the whereabouts of his wife, sought as a grand jury witness, who secretly entrusted her address to him. The privileged communication was not in furtherance of a crime. The decision in Ivey v. United States, 344 F.2d 770 (5th Cir. 1965), is also distinguishable, since the objectionable testimony of Mrs. Ivey did not deal with the furtherance of a crime, but was an admission of a past crime. In Peek v. United States, 321 F.2d 934 (9th Cir. 1963), the court found no abuse of discretion in the trial court's denying a pre-trial motion for severance which urged the possibility that the government would use statements in violation of the marital privilege—the district court had deferred ruling to the actuality of the trial. In the case before us the judge used his discretion to rule before trial. No claim is made that the ruling was an abuse of discretion.

## II.

In the motion to suppress the Kahns alleged that the affidavit supporting the eavesdrop order "nowhere states facts" showing probable use of the Kahn telephones for illegal purposes by "others as yet unknown;" that the government "knew, or should have known," the occupants of the Kahn home and made no request for permission to intercept conversations other than those of Irving Kahn; and that the conversations of Minnie Kahn were "recklessly and illegally" intercepted. The government's answer to the motion asserted that Minnie Kahn fell into the class of "others as yet unknown." The judge suppressed the conversations.

The vital issue is whether Minnie Kahn can properly be included in the class of "others as yet unknown." The judge, in granting the motion, had before him the government's failure to deny that it knew Minnie Kahn was an occupant of the Kahn home and accordingly would use the home phones. We agree with the judge's finding and we hold that the wiretap order did not authorize interception of Minnie Kahn's conversations as she was neither identified in the order nor was she within the class of "others as yet unknown."

Section 2518(1)(b)(iv) of the Act requires the government to identify, in an application, any person, "if known," whose communications are to be intercepted. The implication is that if not known, such a person's conversations may be intercepted if that person's probable complicity in the offenses being committed is not yet known. The wiretap order was limited to conversations of "Irving Kahn and others as yet unknown." Thus in order to satisfy the limitations of the judge's order the wiretap had to meet two requirements: 1) that Irving Kahn be a party to the conversations, and 2) that his conversations intercepted be with "others as yet unknown."

The issue before us rests upon the scope of the term "others as yet un-

13. It is noteworthy also that the attorney-client privilege may not be invoked where commission of a crime is involved. See United States v. Hoffa, 349 F.2d 20, 37 (6th Cir. 1965), aff'd 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

14. 77 Harv.L.Rev. at 734.

known." A narrow construction of the term would limit the meaning of "others as yet unknown" literally to persons whom the government did not know. Under this construction Minnie Kahn would be excluded from the reach of the interception order, since she was admittedly known to the government as Irving's wife. A second construction would confine the term "others as yet unknown" to *those persons whom the government did not know were engaging in illegal conversations with Irving Kahn.* The first construction of "unknown" refers to the *identity* of the person; the second construction refers to the *illegal activities* of the person. Under the second construction, even if the government knew a person it might still not "know" of that person's probable illegal activities. If Minnie Kahn, although known to the government, was not known to be a likely user of the Kahn telephones for illegal activities, she would be "unknown" under the second construction.

No facts were stated in the application and affidavit in support of the authority to wiretap the conversations of "others as yet unknown." The government argues that that is unimportant and that it is enough that the order permits interception of conversations concerning crime to be continued until the manner of Irving Kahn's participation and that of his confederates in the crime be revealed and until the confederates are identified and the place of operation and the nature of the conspiracy are revealed. It contends that the order need not require Irving Kahn's confederates be in conversations only with him and that all conversations about gambling on the subject phones may be intercepted.

Congress, in order to "safeguard the privacy of innocent persons," found that interception should be disallowed where none of the parties had consented to the wiretap and where it is not authorized by a proper court order.[15] It stated that the purpose of Title III was twofold: protection of personal privacy, and "delineating on a uniform basis" the circumstances and conditions under which wiretapping may be authorized.[16] We think that it is necessary therefore to limit the class of "others as yet unknown" as tightly, in the interest of personal privacy, as the competing need for reasonable public protection in law enforcement permits. In our opinion Congress did not intend that the implication in the term "if known" should be extended to embrace persons whom careful investigation by the government would disclose were probably using the Kahn telephones in conversations for illegal activities. We conclude that in the interest of protecting personal privacy a broader construction of the term "others as yet unknown" is required, *i. e.*, if the government did not know but should have known by prudent investigation of the likelihood of Minnie Kahn's use of the telephones for illicit activities, she was not a person "unknown."

It is not in the public interest to relax concern of individual privacy to accommodate less than careful performance on the part of government agents. It is far more important, in our opinion, to protect Minnie Kahn's personal privacy than it is to permit the government to avail itself of fruits of its less than careful intrusion upon her privacy in order to prosecute her for the offense.[17]

---

15. Omnibus Crime Control and Safe Streets Act of 1968, § 801(b), Title III, 82 Stat. 197; S.Rep.No.1097, 90th Cong., 2nd Sess., U.S.Code Cong. & Ad.News, 1968, pp. 2112, 2153.

16. Omnibus Crime Control and Safe Streets Act of 1968, § 801(d), Title III, 82 Stat. 197.

17. "What is truly central to the fourth amendment, as Justice Bradley stated in his historic opinion in Boyd v. United States [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)] is 'the sanctity of a man's home and the privacies of life.'" Spitzer, Electronic Surveillance by Leave of the Magistrate: The Case in Opposition, 118 U. of Pa.L.Rev. 169, 180 (1969).

■ The application of the Assistant Attorney General merely sought authority to wiretap the conversations of "others as yet unknown" on the basis of the agent's affidavit. The affidavit did no more than indicate that the wiretap of conversations of "others as yet unknown" would be useful. The agent's affidavit contains long lists taken from telephone company records of interstate telephone calls using the Kahn phones to discuss gambling. The sources which led to these lists were gamblers who had worked with or engaged in gambling enterprises with Irving Kahn. It is highly improbable that all of these communications were with Irving Kahn. The sources which led to these lists would also seem likely sources from which questioning would elicit information identifying members of the Kahn household other than Irving Kahn who used the telephones in aid of the unlawful enterprise. And if the attempt to elicit that information was unsuccessful, we fail to see why the agent could not state the reason for lack of success, and the interception order find that "normal" investigative procedures have been tried and have failed.[18] The conclusionary statement in the application and affidavit that "normal investigative methods reasonably appear to be unlikely to succeed and are too dangerous to be used" is too slender a reed upon which to rest the invasion of Minnie Kahn's privacy. And the government was precluded from augmenting the application and affidavit at a suppression hearing. United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967).

■ We think the government's wiretap impinged upon Minnie Kahn's privacy and accordingly the government had the burden, at the suppression hearing, of justification. We find no justification in the record for not determining from the informants used for the government's application and affidavit whether Minnie Kahn had received or sent, through the particular telephone numbers, communications with respect to unlawful gambling activities; and the government has not shown that had it conducted its investigation with the care Congress intended to protect personal privacy, it would not have discovered whether or not Minnie Kahn had implicated herself by her conversations. Where, as here, the government's application and affidavit disclosed sources from which it could probably have learned the likelihood that Minnie Kahn was using the Kahn phones in illicit activity, but neither made the attempt, nor stated facts justifying not attempting, to gain that knowledge, the subsequent wiretaps amounted to a virtual general warrant in violation of her Fourth Amendment right.[19] We conclude that the application and affidavit do not support an interpretation of the interception order to include Minnie Kahn in the class of "others as yet unknown" and that the district judge did not err in deciding that the order did not authorize the wiretapping of her telephone conversations.

It might be questioned whether conversations of Minnie Kahn could be lawfully seized had the government after proper investigation determined that no other persons in the household—other than Irving Kahn—had used the phones in committing crimes, and intercepted Irving Kahn's conversations only to find Minnie Kahn discussing with him an illegal enterprise. The suppositious question presupposes no prior knowledge of any unlawful activity by Minnie Kahn and no basis on which to include her in the application and affidavit class of "others as yet unknown" who had in the past used or were presently using the phones for conversations regarding the offense. The question is not relevant to

---

18. 18 U.S.C. § 2518(3)(c): "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

19. *Spitzer, supra* n. 17, at 191.

the question before us. However, we think the evidence seized in such an event might be used in the prosecution of Irving Kahn, but not against Minnie Kahn. There is a distinction between the event supposed in this question and the question arising where, for example, a valid tap on a named person concerning a particular offense uncovers evidence against another person of a different offense. United States v. Cox, 449 F.2d 679 (10th Cir. 1971).

The government relies upon language in Berger v. New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). *Berger* is of no aid to the government in view of our conclusion that the government has not shown why it could not have identified Minnie Kahn in its application and affidavit. Neither does United States v. Cox, *supra,* aid the government. There the order specified narcotics violation, and conversations about bank robbery were monitored. The court found no constitutional error in the use of the conversations at the bank robbery trial.

Furthermore, the government analogizes the Kahn situation to the discussion in Alderman v. United States, 394 U.S. 165, 177 n. 10, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), where the Court approved seizure and use of narcotics in a proper warrant specifying gambling material. There the narcotics were contraband. In United States v. Sklaroff, 323 F. Supp. 296, 325 (S.D.Fla.1971), a district judge decided that "if a lawful court order . . . [as to a] named person[s] is issued, and . . . conversations [of] . . . other persons not named . . . are *lawfully* intercepted" (emphasis added), the seized conversations may be used. This decision was followed in United States v. Perillo, 333 F.Supp. 914, 919–921 (D.Del.1971). The word "lawful" in the language quoted begs the question before us.

The judgment is reversed in so far as it is based upon the marital privilege ground, and is affirmed in so far as it

decided that the wiretap order did not authorize the interception of Minnie Kahn's conversations.

KNOCH, Senior Circuit Judge (concurring in part and dissenting in part).

I am in complete accord with Judge Kiley's well reasoned views concerning the interception of Minnie Kahn's telephone conversations with others than Irving Kahn, but I must respectfully dissent from his conclusion that the marital privilege does not apply to their conversations with each other. As counsel for the Kahns argued persuasively before this Court, an attorney-client relationship may be effectively destroyed once the two become fellow criminals, but husband and wife remain husband and wife even though they embark on a joint criminal venture. I would affirm the decision of the District Judge.

STEVENS, Circuit Judge (concurring in part and dissenting in part).

The government's appeal from Judge McMillen's suppression order requires us to construe (a) an earlier order entered by Judge Campbell authorizing the telephone intercepts and (b) the statutory requirement that such an order specify the identity of the persons, "if known," whose conversations are to be intercepted. I agree with Judge Kiley that conversations between Minnie and her husband in aid of their criminal enterprise were not privileged. I believe, however, that Judge Campbell's order of March 20, 1970, authorized the agents to listen to conversations in which Irving did not participate, and that the failure to name Minnie in the order is not an appropriate ground for suppressing her conversations.

A. *The Order.*

On March 20, 1970, the government applied to Judge Campbell for an order authorizing the interception of conversations using two telephones identified by number and by location in Irving Kahn's

residence. One purpose of the request was to intercept communications which would reveal the identity of Irving Kahn's confederates.[1]

The request was supported by a detailed 18-page affidavit summarizing the results of a thorough investigation leading to the conclusion that Irving Kahn's two telephones were being used in an illegal gambling enterprise, and that Irving Kahn was a principal in the venture. Based on that showing, Judge Campbell found probable cause to believe that Irving Kahn "and others as yet unknown" have committed and are committing the specified offenses, and that the two designated telephones "have been and are being used by Irving Kahn and others as yet unknown in connection with the commission of the above described offenses." It should be noted that he did not find merely that the telephone numbers were being used illegally, but rather that the two telephones in Irving's residence were being so used by "others as yet unknown" as well as by Irving. Although the record support for Judge Campbell's findings has been suppressed, it was available to Judge McMillen, who entered the suppression order, as well as to this court. No judge who has reviewed that record has expressed any doubt that Judge Campbell's findings were fully supported by the record.

Having made the findings required by the statute, Judge Campbell authorized the interception of communications over Irving Kahn's two telephones. The scope of the authorization granted by Judge Campbell's order was to "intercept wire communications of Irving Kahn and others as yet unknown concerning the above-described offenses to and from two telephones, subscribed to by Irving Kahn, both located at 9126 Four Winds Way, Skokie, Illinois, a private residence, and carrying telephone numbers 675–9125 and 675–9126, respectively."

If we consider the language used by Judge Campbell in his findings and in his order, it is clear that the intercept authority was not limited to conversations to which Irving Kahn was a party. If that had been Judge Campbell's purpose, there would have been no need to refer to the illegal use of the two telephones in Kahn's residence, not only by Kahn himself, but also by "others as yet unknown." The authorization in the order does not describe communications *between* Irving Kahn and others; rather it describes "conversations *of* Irving Kahn and others as yet unknown" using the two telephones in his residence. If only the conversations of Irving were involved, the findings and the order are replete with redundancies.

My reading of the statement of purpose in the government's application, Judge Campbell's findings, and the language of the order itself does not permit me to accept an interpretation which limits the scope of the intercept authority to conversations to which Irving Kahn was a party.

### B. *The Statute.*

There are two separate reasons why I believe the majority misreads the statute: (1) in my opinion the record does not support the conclusion that Minnie Kahn's participation in the gambling enterprise was "known" to the government on March 20, 1970, within the meaning of § 2518(4)(a); and (2) the adequacy of the government's investigation prior to March 20, 1970, is not relevant to the "if known" issue arising under § 2518(4)(a), but rather pertains to a question which was resolved by a finding of fact entered in compliance with § 2518(3)(c).

### 1. *Section 2518(4)(a).*

This section provides:

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

---

1. Affidavit of Douglas P. Roller, p. 4.

"(a) the identity of the person, if known, whose communications are to be intercepted; . . ."

82 Stat. 219, 18 U.S.C. § 2518(4)(a).

Just as a search warrant must carefully limit the discretion of the officer executing the warrant by defining the scope of his authority to search and the objects to be seized, this subsection was intended to require the order to define the scope of the agent's authority to intercept conversations.[2] The inclusion of the words "if known" indicates that Congress intended to permit the interception of some conversations of persons whose participation in the criminal activity was unknown at the time the order was entered. As I read the record, Minnie Kahn was such a person on March 20, 1970.

The court does not hold that the record supports the conclusion that Minnie Kahn was a person who was actually "known" to be participating in the conversations sought to be seized. On the contrary, the court treats the statutory words "if known" as if Congress had used language broad enough "to embrace persons whom careful investigation by the government would disclose were probably using the Kahn telephones in conversations for illegal activities." In my opinion we should adhere to the language which Congress actually used rather than adopt what we might consider to be a more desirable requirement.

The extent of the government's knowledge should, I believe, be appraised as of the time it requested an intercept order. Just as evidence obtained by means of a search may not be used retroactively to establish probable cause for the issuance of a warrant defective on its face, it seems equally clear that our present knowledge of Minnie Kahn's guilt may

not be imputed to the agents who had not yet intercepted her conversations. If we put the seized evidence to one side, there is nothing in the record to support an inference that the government should have known that Minnie Kahn, instead of Pamela Kahn, Howard Kahn, or possibly some regular visitor, would use Irving's telephones to transmit gambling information to a third party while he was out of town.

As Judge Kiley points out, it is entirely possible that one of the anonymous informants referred to in the affidavit supporting the government's application for intercept authority might have known that Minnie made illegal telephone calls and might have given that information to a government investigator; on the other hand, it is also possible that she made such calls only on rare occasions when Irving was out of town, or that informants willing to describe Irving might not have been willing to mention Minnie. The whole inquiry, in my opinion, is a matter of speculation and is neither necessary nor appropriate to the determination of whether the order meets the "if known" requirement of § 2518(4)(a).

*2. Section 2518(3)(c).*

The statute authorizes the judge to enter an intercept order if he makes certain determinations on the basis of the government's factual showing. Among others, he must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 82 Stat. 219, 18 U.S.C. § 2518(3)(c).

Judge Campbell made an express finding of fact complying with this requirement. The finding is supported by a detailed description of the "normal investi-

---

2. At least that is a fair inference to be drawn from the language of the section and the explanatory reference in the Senate Committee Report to West v. Cabell,

153 U.S. 78, see especially 87–88, 14 S.Ct. 752, 38 L.Ed. 643, U.S.Code Cong. & Ad.News, 1968, 90th Cong., 2d Sess. p. 2191 (1968).

gative procedures" which had been used, and by a perfectly reasonable explanation of why "the interception of these telephone communications is the only available method of investigation which has a reasonable likelihood of securing the evidence necessary to prove violations of these statutes." [3] Although the results of the investigation plainly indicated that Irving Kahn's telephones were being used in connection with the commission of an offense, the record also supports the conclusion that it was unlikely that admissible evidence would be available to prove Kahn's guilt unless intercept authority was obtained. Nothing in the record suggests that a further investigation which might have ascertained Minnie's participation would have obviated the need for such authority. In short, the finding required by § 2518(3)(c) was made and, in my opinion, is supported by the record.

Although § 2518(3)(c) imposes a duty on the government to exhaust normal investigative procedures before applying for an intercept order, it seems unlikely that the "if known" requirement in § 2518(4)(a) was intended to impose either an additional exhaustion requirement or a more severe standard for measuring the government's compliance with the express language of subsection (3)(c). I am therefore persuaded that the majority's interpretation of the "if known" requirement will merely tend to confuse two quite different statutory purposes.

In sum, in my opinion the court's decision is predicated on an improper reading of Judge Campbell's order of March 20, 1970, and an incorrect interpretation of the statute. In view of the majority's disposition of the case, comment on constitutional issues is inappropriate.

3. Affidavit of Ray I. Shryock, p. 16.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New