**UNITED STATES of America**
**v.**
**Patricia Ann BLEAU et al.**
**Crim. No. 72–0434.**

United States District Court,
D. Maryland.
July 11, 1973.

See also D.C., 363 F.Supp. 430.

George Beall, U. S. Atty., D. Md., David E. Holt, Jr., Sp. Atty., U. S. Dept. of Justice, Baltimore Strike Force, Baltimore, Md., for plaintiff.

Robert Cahill, Arnold Weiner, and M. Albert Figinski, Baltimore, Md., for defendant Calman Bernstein.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Calman Bernstein, a defendant in this prosecution under 18 U.S.C. § 1955 for alleged gambling activities, has moved for the suppression of wiretap evidence obtained under an authorization order entered on April 14, 1972. Bernstein claims that, at the time the April 14 order was obtained, the government knew of his alleged involvement in the gambling activities and use of the communication facilities to be monitored and, for this reason, his name was required to be listed in the application seeking and the order authorizing the wiretap. Since it was not, he argues, suppression of all evidence against him secured through the use of the April 14 wiretap must occur.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereafter Title III), 18 U.S.C. § 2510 et seq., imposes a qualified requirement that a party whose conversations are to be intercepted be named in the application and order. Section 2518(1)(b)(iv) requires a listing in the wiretap application of "the identity of the person, if known, committing the offense and whose communications are to be intercepted." Section 2518(4)(a) similarly requires that the authorization order list "the identity of the person, if known, whose communications are to be intercepted." These provisions, among others, are designed to insure that the authorizing judge's order—i. e., the warrant—will be adequately particularized according to Fourth Amendment standards as enunciated in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L. Ed.2d 1040 (1967) and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). *See,* Senate Report No. 1097, 1968 U.S.Code Congressional and Administrative News, 2112, 2189–90. They are also keyed to Title III's notice provisions—an integral part of the statute—in that those named in the order receive an inventory as a matter of right while others whose communications are intercepted in the course of the wiretap receive an inventory only in the discretion of the authorizing judge. 18 U.S.C. § 2518(8)(d).

■■■ The listing in the warrant of the name of the owner of the premises to be searched or the things to be seized is not specifically required by the Fourth Amendment, which provides that "no Warrants shall issue, but upon . . . particularly describing the place to be searched, and the person or things to be seized." Hanger v. United States, 398 F.2d 91, 99 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); Miller v. Sigler, 353 F.2d 424, 428 (8th Cir. 1965), cert. denied, 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966); Dixon v. United

States, 211 F.2d 547, 549 (5th Cir. 1954); United States v. McClard, 333 F.Supp. 158, 163 (E.D.Ark.1971), aff'd, 462 F.2d 488 (8th Cir. 1972); United States v. Ortiz, 311 F.Supp. 880, 883 (D.C.Colo.1970), aff'd, 445 F.2d 1100 (10th Cir. 1971), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). All that need be particularly described for Fourth Amendment compliance is the place to be searched and the thing or person to be seized.[1] See Berger v. New York, 388 U.S. 41, 58–59, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), where failure to particularize in this respect invalidated the New York statute despite the statute's requirement that the speaker be named whose conversations were to be intercepted. In regard to telephone communications it thus appears that under the Fourth Amendment it is possible to seize particularly described conversations from a particularly described place without naming the speaker in the warrant. United States v. Fiorella, 468 F.2d 688, 691 (2d Cir. 1972); United States v. King, 335 F. Supp. 523, 538–540 (S.D.Cal.1971); United States v. Perillo, 333 F.Supp. 914, 921 (D.Del.1971); United States v. Sklaroff, 323 F.Supp. 296, 324–325 (S. D.Fla.1971). Of course, naming the speaker further particularizes the description of the conversations to be seized and would reinforce an otherwise detailed description of the conversation. See, e. g., Katz v. United States, 389 U. S. 347, 354, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To this end, in the effort to particularize to the greatest degree possible, Title III requires that the speaker be identified, but only upon a condition of reasonableness that the speaker be named "if known." On the other hand, if only by implication, if the speaker's identity is now known, conversations of the type and from the place particularly described can still be seized. Because the Fourth Amendment does not demand an owner's name be in a search warrant otherwise properly descriptive, a failure to name an individual could only be violative of Title III's requirements and not those of the Fourth Amendment. If suppression is proper, it would be the result of a failure to comply with Title III rather than the Fourth Amendment.

Since Title III requires the naming only of those who are known, it must be determined who fits into the class of knowns, and who, in the unknowns. In United States v. Kahn, 471 F.2d 191 (7th Cir. 1972), cert. granted, 411 U.S. 980, 93 S.Ct. 2275, 36 L.Ed.2d 956 (1973), a decision defendant pillars his position upon, the Seventh Circuit tightly contracted the category of "unknowns." In that case, the government, under an order authorizing the tapping of gambling conversations between Irving Kahn and "others as yet unknown", intercepted gambling conversations between Irving Kahn and his wife, Minnie, whom the government did not know until that time was involved in her husband's illegal activities. Subsequently, two gambling calls between Minnie and known gambling figures were intercepted. The Seventh Circuit affirmed the suppression of Minnie Kahn's conversations on the ground that she did not fit into the class of persons "as yet unknown" and, not being named in the order, there was no authority to intercept her communications. The court stated that when the government can discover by a prudent investigation the names of all persons involved and whose conversations will be tapped, those persons must be named in the order if the government wants to tap their conversations. The

---

1. Property not actually described in the search warrant may still be seized if reasonably related to the purpose of the search. Taylor v. State of Minnesota, 466 F.2d 1119, 1121 (8th Cir. 1972); Louie v. United States, 426 F.2d 1398–1402 (5th Cir. 1970), cert. denied, 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158 (1970). Contra, if the officers obtaining the warrant knew of the property's existence, intended to seize it, but failed to have it listed on the warrant. Coolidge v. New Hampshire, 403 U.S. 443, 470–471, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Carney, 356 F.Supp. 855, 858 (M.D.Tenn.1973).

court looked at the affidavit in the file in the wiretap proceeding and decided the government could have pursued other conventional avenues of investigation to determine Minnie Kahn's complicity in her husband's activities before submitting the wiretap application, but had not done so. The court noted that the government must demonstrate that other investigative techniques to discover an unnamed person's identity had been tried and failed and that the government could not rely on the conclusionary statement in the application that "normal investigative methods reasonably appear to be unlikely to succeed and are too dangerous to be used" as an excuse or justification for not having known of Minnie Kahn's gambling activities and obtaining her name in the authorization order.

Judge Stevens dissented. He reasoned that Congress intended to permit conversations of persons unknown to the government at the time of the application for the wiretap order to be intercepted and that the order in this case so provided. Since nothing in the record indicated the government had knowledge of Minnie Kahn's involvement, she properly fit in the class of "unknowns." He felt the adequacy of the government's investigation was irrelevant to the requirement of listing names and pertained only to Section 2518(3)(c) which required the authorizing judge to make a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Since the authorizing judge had, in Judge Stevens' view, justifiably found that other means of investigation were inadequate or too dangerous, the government had to investigate by conventional means no further to intercept the conversations of people like Minnie Kahn, not known to the government at the time of the application.

██ Having considered both positions expressed in *Kahn*, this court is persuaded that Judge Stevens is correct. Sections 2518(1)(c) and 2518(3)(c), and not Sections 2518(1)(b)(4) and 2518(4)(a), impose the exhaustion of conventional investigative techniques requirement on the government. These sections do not require the government to try and fail at every conceivable other avenue of investigation before a Title III wiretap can be obtained. United States v. Lanza, 356 F.Supp. 27, 30 (M. D.Fla.1973). They permit a Title III interception if the authorizing judge finds other investigative techniques are either too dangerous to try or are unlikely to succeed if tried. *See, e. g.,* United States v. Bobo, 477 F.2d 974 et seq. (4th Cir. 1973), where the Fourth Circuit approved the authorization of a Title III wiretap upon the conclusion by the authorizing judge "that normal investigative procedures reasonably appeared unlikely to succeed." If the authorizing judge finds one or the other, he can then approve the wiretap whether the government has the theoretical capability of using other investigative means or not. *See,* Senate Report No. 1097, 1968 U.S.Code Congressional and Administrative News, 2112, 2190. The majority opinion in *Kahn* ignores these sections of the statute and, in this court's mind, imposes a limit on the government not justified by the language of Title III or the Fourth Amendment.

██ Before there is a need for the wiretap order to specifically list a person whose conversations are to be intercepted, the government must, at the time the order is applied for, have probable cause to believe that person is involved in the criminal activity the wiretap seeks to monitor and is a user of the communication facilities for that illegal purpose. Probable cause must exist for the government to know both the involvement and likely use, for one without the other does not mandate a naming in the order. Furthermore, the government must have probable cause to believe the involvement and use; mere suspicion is not sufficient. Otherwise, if probable cause did not exist to name the person in the application, there would not exist sufficient probable cause

under Fourth Amendment standards to obtain a warrant against the named person, although this would not mean probable cause would not exist to intercept that person's conversations as a member of the class of "others not yet known." The statutory provisions requiring the authorizing judge to make specifically detailed probable cause findings support the conclusion that probable cause, and not suspicion, must exist as to both criminal involvement and use of the facility. *See* 18 U.S.C. § 2518(3). Consequently, if the government, at the time the application is made, has probable cause to "know" the person, the application and order under the terms of Title III must name that person or suppression of that person's monitored conversations will be appropriate.[2]

■ This requirement could put the government in the awkward and unfairly precarious position of having to choose whether to name the individual in the application when questionable probable cause exists and risk being turned down by the authorizing judge as to that person, or proceed to investigate under the authorization of "others yet unknown" and face a possible challenge that the individual should have been named in the order. For this reason, the court believes a strong and clear, and not questionable, showing of probable cause existing at the time of the ap-

plication is needed to sustain a motion to suppress after the wiretap has concluded, such a showing being tantamount to demonstrating a conscious disregard for the dictates of Title III.[3]

Defendant avers that he was under investigation by the government, which on March 30 had strong suspicions of his involvement. These suspicions, defendant claims, were verified by interceptions obtained through an interception authorized on March 30 and, with this knowledge, the government had a duty to secure his name in the order of April 14.

■ At a prior hearing, the government represented by counsel that it did not have probable cause on April 14 to seek inclusion of the name of Calman Bernstein in the authorization order. It is the government's position that he was at this time still in the class of "others as yet unknown." No evidence or testimony was presented at this hearing and there exists no record to conclusively support or deny this representation, although defendant has proffered transcript of his calls intercepted under the March 30 order which he contends verified the government's prior investigatory suspicions. Nothing though has been offered to establish the existence of those prior investigatory suspicions. Absent an adequate record, the court cannot rule on the scope of the govern-

---

2. Violation of the statutory requirements by a deliberate failure to list the name of the individual whose conversations the government intends to monitor is directly analogous to a violation of the constitutional requirements by a deliberate failure to describe in a warrant the property the government intends to seize. In Coolidge v. New Hampshire, 403 U.S. 443, 471, 91 S.Ct. 2022, 2040, 29 L.Ed. 2d 564, the court stated,

  If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirements of "Warrants . . . particularly describing . . . [the] things to be seized." The initial intrusion may, of course, be legitimated not by a war-

rant but by one of the exceptions to the warrant requirement, such as hot pursuit or search incident to lawful arrest. But to extend the scope of such an intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure.

3. 18 U.S.C. § 2515 prohibits the use as evidence of intercepted communications "if the disclosure of the information would be in violation of this chapter." A knowing and deliberate failure to follow the statute's clear procedure would be a violation of Title III.

ment's knowledge at the time of the application. Therefore, an evidentiary hearing on this point, in accordance with this opinion, shall be held at a date to be scheduled.

There remains pending a motion by defendant Berstein for the suppression of evidence seized at the time of his arrest. Since this motion also rests on disputed facts, an evidentiary hearing is needed for its resolution. The court will hold an evidentiary hearing on this motion at the same time the evidentiary hearing regarding the government's prior knowlege is held.