486 So.2d 504 (1986)
STATE
v.
Sandra Dawn BROWDER.
3 Div. 252.
Court of Criminal Appeals of Alabama.
March 11, 1986.
*505 Hugh M. Caffey, Jr., Brewton, for appellee.
Charles A. Graddick, Atty. Gen., and Alice Ann Boswell, Asst. Atty. Gen., for appellant.
PATTERSON, Judge.
The State appeals from the trial court's determination that certain testimony was due to be suppressed due to the marital communications privilege. A.R.Crim.P. Temp. 17. The defendant, Sandra Dawn Browder, was indicted for the murder of Timmy Baber. Her ex-husband, John Douglas Maddox, Jr., was to be called as a witness for the prosecution. At a pre-trial hearing to determine the admissibility of his testimony, Mr. Maddox testified that approximately two days prior to the murder the defendant told him she was going to kill Baber. Maddox told her "not to do it" and to "forget about it." Maddox was in the hospital, two days later, when the defendant entered his private room around 11:00 or 12:00 o'clock in the morning and told him that she had killed Baber. The defendant then threw "around ten thousand" dollars on his chest.
Maddox and the defendant left the hospital around 2:30 or 3:00 o'clock in the afternoon on the same date. On the way to their residence, the defendant instructed Maddox to turn down a small side road, where the defendant retrieved her jacket and pistol from some bushes. Maddox stated that he helped the defendant burn the jacket and dispose of the pistol by throwing it into a river.
The defendant told Maddox that she had gotten Baber to look at a dent on his car and when he bent over, she shot him in the back. She told Maddox that she had committed this act on a "little road past the airport" in Escambia County.
The trial court held that the testimony of Maddox was due to be suppressed. The court found that the defendant and Maddox were legally married on September 13, 1979; that the alleged offense occurred on October 13, 1979; and that the communications and acts in question took place during the marriage and were confidential communications. The court held that the defendant had the "legal right to claim the privilege for confidential communications between herself and her former husband ... and that she may prevent her former spouse from testifying." The court relied on Arnold v. State, 353 So.2d 524 (Ala. 1977) in reaching this decision. Additionally, the court specifically held that Maddox was not a joint participant or an accomplice to the murder of Baber. The State urges us to adopt a "crime-fraud" exception to the confidential communications privilege, which has been embraced by various federal and state courts in an ever-increasing number.
The marital exemption is recognized in two distinct and separate forms: The rule of incompetency and the privilege against disclosure of confidential communications. Arnold v. State, 353 So.2d 524 (Ala.1977) (citing Owen v. State, 78 Ala. 425 (1885); and Sumner v. Cooke, 51 Ala. 521 (1874)). See also C. Gamble, McElroy's Alabama Evidence, § 103.01-.04 (3d ed. 1977); 8 Wigmore, Evidence § 2336, § 2337 (McNaughton rev. 1961). The Alabama Legislature modified the rule of incompetency in 1915, § 12-21-227, Code of Alabama 1975, and allowed the spouse to testify voluntarily. The statute allowing adverse spousal testimony has no effect on the "independent nature" of the confidential communications privilege. Arnold at 526:
"While [the rule allowing adverse spousal testimony] and the privilege of confidential marital communications are animals of the same species, in that they both protect the marriage, each is a different variety of that species. [The rule allowing adverse spousal testimony] protects the witness[;] testimony may be given voluntarily despite the defendant's objection so long as it does not pertain to confidential matters.... The privilege *506 for confidential communications, however, belongs to the communicating spouse, and he or she may prevent the other spouse from testifying to any conversation or action performed in the privacy of the marriage."
In the case at bar the statute allowing adverse spousal testimony does not apply because the defendant and Maddox are divorced. Id. We must determine whether the defendant can bar her former husband's testimony by invoking the confidential communications privilege.
The confidential communications privilege is based on the premise of preservation of the family. "The privilege for confidential marital communications is thought to do this by encouraging the spouses to be frank and open with each other by protecting marital privacy." United States v. Van Drunen, 501 F.2d 1393, 1396 (7th Cir.), cert. denied, 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974) (citing United States v. Kahn, 471 F.2d 191, 194 (7th Cir.1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973), rev'd on other grounds, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The Seventh Circuit in Kahn and Van Drunen has adopted an exception to the confidential communications privilege by concluding that "the public interest in preserving the family was not enough to justify protecting conversations in furtherance of crimes joined by both spouses ...". Van Drunen, 501 F.2d at 1396.
In United States v. Mendoza, 574 F.2d 1373 (5th Cir.), cert. denied, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978), the Fifth Circuit examined the policies underlying the confidential communications privilege in conjunction with the exception to the rule established in the Seventh Circuit (which the 5th Circuit viewed as being adopted by the Second Circuit in United States v. Cotroni, 527 F.2d 708 (2d Cir. 1975), cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976)). The Mendoza court stated:
"Accordingly, we have weighed the need for truth against the importance of the policy sought to be furthered by the privilege, and considered the likelihood that recognizing the privilege in the factual setting of this case will in fact further that policy, and, if so, how much.... The result is that this Court is now convinced that the rule of the Second and Seventh Circuits strikes the proper balance between domestic tranquility and the public interest therein, on the one hand, and the revelation of truth and attainment of justice, which also are in the public interest, on the other. Therefore, we hold that conversations between husband and wife about crimes in which they are jointly participating when the conversations occur are not marital communications for the purpose of the marital privilege, and thus do not fall within the privilege's protection of confidential marital communications."
Other federal and state courts have consistently held that spousal communications pertaining to criminal activities, in which both spouses participate actively, or in which they participate in the fruits of the crime or in the covering up of the crime, are not protected by the confidential communications privilege. United States v. Kapnison, 743 F.2d 1450 (10th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 2017, 85 L.Ed.2d. 299 (1985); United States v. Neal, 743 F.2d 1441 (10th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 1848, 85 L.Ed.2d 146 (1985); United States v. Archer, 733 F.2d 354 (5th Cir.), cert. denied, ___ U.S. ___ 105 S.Ct. 196, 83 L.Ed.2d. 128 (1984); United States v. Broome, 732 F.2d 363 (4th Cir.), cert. denied, ___ U.S.___, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984); United States v. Ammar, 714 F.2d 238 (3d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); United States v. Entrekin, 624 F.2d 597 (5th Cir.1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981); United States v. Price, 577 F.2d 1356 (9th Cir.1978), cert. denied, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979); Gill v. Commonwealth, 374 S.W.2d 848 (Ky.1964); State v. Smith, 384 A.2d 687 (Me.1978); Gutridge v. State, 236 Md. 514, 204 A.2d 557 (1964). These cases *507 stand for the proposition that "marital communications having to do with the commission of a crime and not with the privacy of the marriage itself do not fall within the privilege's protection." Mendoza, 574 F.2d at 1380.
A thorough study of the marital privilege, its history, present status, and predicted future is contained in Glenn, Deconstruction of the Marital Privilege, 12 Pepperdine L.Rev. 723 (1985). In this article, discussing criminal communications, the author notes, "Such communications are concerned with the commission of a crime, not with the privacy of a marriage; the information sought has nothing to do with intimate marital relations and the privacy interests of husband and wife are not at stake." Id. at 753. "This privilege is akin to the attorney-client privilege, also designed to protect the confidences of the communicator, which has been held not to extend to communications in furtherance of criminal activity." Ammar, 714 F.2d at 258.
Appellee argues that the "crime-fraud" exception is foreclosed by the Alabama Supreme Court's decision in Arnold v. State, 353 So.2d 524 (Ala.1977). We view Arnold as having no effect on our decision in this cause. In Arnold the Court applied the confidential communications privilege to the facts of that case and determined that the privilege did not bar "testimony by one spouse concerning an overheard conversation between the other [spouse] and a third party." Id. at 527. The Court also held that "an act performed with the confidence of the marriage in mind, and as such should be excluded." Id. In Arnold there was absolutely no evidence that the testifying spouse participated in the criminal activity in any form. The testifying spouse was not an accomplice or joint participant, nor did she participate in the "fruits" of the crime or aid in the "cover-up" of evidence by any means. Based on the facts of Arnold, the "crime-fraud" exception would have no applicability.
In the case sub judice the appellee correctly points out that based on the testimony in the record, Maddox was not a joint participant or an accomplice in the killing of Baber. It is clear, however, that Maddox could have been charged with hindering prosecution in the first degree, § 13A-10-43, Code of Alabama 1975, by his acts of aiding the defendant in the destruction and concealment of physical evidence. See § 13A-10-42(5). The conduct proscribed by the hindering-prosecution-statute "would ordinarily make one an `accessory after the fact.'" Commentary, § 13A-10-42 through § 13A-10-44.
In United States v. Neal, 743 F.2d 1441, 1446 (10th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 1848, 85 L.Ed.2d 146 (1985), the court stated:
"If ... the spouse who did not conspire to or participate in the commission of the crime nevertheless thereafter, with knowledge of the fact that the other spouse did commit the crime, actively, by overt acts, participates in the `fruits' of the crime or `covers up' evidence thereof by any means, then the marital communications privilege does not apply to protect the spouse who committed the crime from voluntary incriminating testimony of his spouse who actively participated as an accessory-after-the-fact."
We agree with the decision reached in Neal and adopt this language for guidance in this and future cases. The testimony of Maddox clearly reveals that he helped the defendant destroy the jacket and dispose of the pistol. Therefore, the confidential communications privilege cannot be invoked to protect Browder, who allegedly committed the crime, from the voluntary incriminating testimony of Maddox. Once Maddox became a participant in the crime, albeit after the fact, all communications between husband and wife pertaining to the crime were admissible and not subject to the confidential communications privilege. In our view Maddox became a participant in the crime concurrent with Browder's statement that she had killed Baber, and her act of throwing the money on his chest. Maddox's participation is evidenced by his admitted overt acts of aiding Browder in disposing *508 of physical evidence of the crime. The statement made by Browder at the hospital two days prior to the killing was a confidential communication protected by the privilege. There is nothing in the record before us to suggest that Maddox encouraged, acquiesced in, or aided Browder's acts in any way, until after the alleged murder occurred. Therefore, only those communications which occurred after Maddox became a participant in the crime are admissible.
We are of the opinion that the so-called "crime-fraud" exception to the confidential communications privilege is based on sound logic and reason. The privacy interests which the privilege seeks to protect will not be hindered; and the exception will further the public's interest in ascertaining the truth in order that justice may be properly served.
In this instance the trial court was correct in excluding the statement made two days prior to the alleged murder, as that should properly be categorized as a privileged communication between husband and wife. It was a statement made with the confidence of the marriage in mind and thus properly excluded.
The trial court's suppression of the remaining testimony was error. This cause is therefore reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TYSON and TAYLOR, JJ., concur.
McMILLAN, J., concurs specially.
BOWEN, J., joins in special concurrence.
McMILLAN, Judge (concurring):
I agree with the majority position which holds that once Maddox became a "participant in the crime", those communications between Maddox and the defendant (Browder) would be "admissible and not subject to the confidential communications privilege." Additionally, I agree with the majority position that the "statement made by Browder at the hospital two days prior to the killing was a confidential communication protected by the privilege." I do not, however, agree with the majority's position which is stated as follows:
"Maddox became a participant in the crime concurrent with Browder's statement that she had killed Baber, and her act of throwing the money on his chest. Maddox's participation is evidenced by his admitted overt acts of aiding Browder in disposing of physical evidence of the crime." (Emphasis added.)
I do not believe that Browder's actions (when she informed Maddox that she had killed Baber and threw money on Maddox's chest) should be construed as an act of participation in criminal activity on the part of Maddox at that point. To conclude, as the majority has done, that Maddox was a participant at this point would be to apply a subjective analysis to the facts of the case. The proper test, I believe, is an objective one. Until Maddox actually committed an "overt act" which would further the progress of the criminal activity, he could not be considered a participant in the crime. Mere knowledge of criminal activity on the part of the non-principal spouse should not destroy the privilege which protects confidential marital communications.
Such a conclusion is consistent with cases from the Alabama courts which have concluded that, for certain types of offenses, mere passivity would not necessarily establish criminal intent. The majority, in the present case, has concluded that Maddox might be considered something similar to an "accessory after the fact." Maddox could not be considered "an accessory after the fact," however, until the point that he provided some type of active aid to Browder. Kuczenska v. State, 378 So.2d 1182, 1185 (Ala.Cr.App.1979), cert. denied, 378 So.2d 1186 (Ala.1980).[1] In this case, the first objective evidence of "active *509 aid" would be, at the earliest, when Maddox turned down the side road, instead of going straight home from the hospital. The most obvious evidence of Maddox's participation by way of "active aid" occurred when he helped Browder burn her jacket and throw the murder weapon into the river. At this point, any further communications between Maddox and Browder could, under the "crime-fraud" exception to the confidential marital communications privilege, be admitted into evidence.
Although the majority relies heavily on the case of United States v. Neal, 743 F.2d 1441 (10th Cir.1984), it is apparent that the present case is factually distinguishable from Neal. In Neal, the wife of the defendant (who was the "testifying spouse" for purposes of a discussion of the privilege), acted initially in a much more agressive and overtly participatory manner than did Maddox, the testifying spouse in the present case. The wife in Neal took immediate action when her husband brought in stolen money on the night of the robbery. The couple in Neal discussed, in detail, the crime which had just been committed and the wife suggested the method of disposal of the money which they should use. Within a few days after the robbery, the wife in Neal burned some of the money, and spent the remainder of it. Thus, it is apparent that the testifying spouse in Neal was "participating" in the fruits of the criminal activity from the moment she learned of the crime.[2]
The express issue raised by the case sub judice was not decided in Neal. The court in Neal initially concluded that the testifying spouse was an "accessory-after-the-fact to the robbery," and then stated as follows:
"We do not here decide whether, in accessory-after-the-fact cases, there may be a basis for limiting the testimony of the spouse who becomes an accessory-after-the-fact to that which was said and that which occurred after the non-principal spouse first actively participated in the fruits of the crime or actively engaged in a cover-up, with prior knowledge of the fact that the opposite spouse committed the principal crime. We are inclined, without here deciding, to the view that the only exception to denial of admissibility of testimony of the accessory-after-the-fact spouse relative to all admissions or statements made by the spouse who committed the principal crime involves a situation where the accessorial spouse is involved only to the extent of knowledge gained by virtue of the admission. [Emphasis in original.]" Id.

The court in Neal recognized that the non-principal spouse's mere knowledge of criminal activity should not destroy the privilege; rather, some "active" participation in the "fruits of the crime" would be necessary. For these reasons, I feel that the privilege remained intact until Maddox committed an "overt act." From that point forward, the "crime-fraud" exception should apply.
NOTES
[1] In a similar manner, the offense of concealing a felon requires some type of active aid; mere passivity is expressly excluded. Lake v. City of Birmingham, 390 So.2d 36, 38 (Ala.Cr.App. 1980).
[2] It is also apparent that the marital relationship in Neal had deteriorated prior to the criminal activity.